FILED

2004 FEB -9 P 12: 53

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | FEBRUARY 6, 2004 |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER, SEVERANCE AND STAY

This Memorandum is submitted in support of the Motion for Protective Order,

Severance and Stay filed by Nationwide Mutual Fire Insurance Company

("**Nationwide**").

## I.   BACKGROUND

A. <u>The Fire</u>.

On July 7-8, 2001, a fire occurred at a building owned by the plaintiff located at

83 West Street, New Britain, Connecticut.  The plaintiff made a claim with Nationwide

under a property insurance policy.  Nationwide, after a comprehensive investigation

denied the claim on the grounds that the plaintiff was responsible for intentionally

FELDMAN & HICKEY, LLC  •  ATTORNEYS AT LAW  •  10 WATERSIDE DRIVE, SUITE 303
FARMINGTON, CONNECTICUT 06032-3084  •  (860) 677-0551  •  FAX (860) 677-1147

causing the fire to be set and misrepresenting material facts relating to the insurance claim.

At the time of the fire, the building was vacant, unoccupied and gutted, having been in a state of renovation for a substantial period of time. A pre-fire appraisal established the market value of the property, in a gutted condition, to be $20,000.00. The plaintiff made an initial claim to Nationwide in an amount exceeding $200,000.00. Plaintiff's financial motive for this fire is apparent.

The incendiary nature of this fire is also well established. The building had no utilities—so the fire could not have been caused by an electrical or natural gas mishap. Nor was the structure inhabited, so that accidental human causes such as cooking or smoking are ruled out.

The fire evolved rapidly and grew into an enormous inferno, creating sufficient heat to ignite or cause damage to neighboring buildings and nearby cars. Yet most of the building was devoid of furniture, rugs, personal property and other items which would provide the type of fuel load necessary to create such an inferno. Rather, substantial quantities of accelerant must have been liberally and intentionally spread throughout the building causing the development of the fire.

2

Finally, the City of New Britain, which through its fire marshal and police department has been investigating this matter has stated in recent motions filed with this Court: "The New Britain Police Department has been investigating that fire for possible criminal activity. The investigation is still pending as there is a current lead which the police department is following. The disclosure of the requested records would be prejudicial to the investigation, particularly since the plaintiff has not been ruled out as a suspect." See January 28, 2004 Motion to Quash Subpoena directed to William J. Sencio, Chief of Police dated January 16, 2004 at p. 3-4. See, also City's January 28, 2004 Motion to Quash Subpoena directed to Timothy T. Stewart dated January 16, 2004; City's January 28, 2004 Objection to Subpoena.

B.     The Complaint.

The plaintiff has brought this action in six Counts. The First Count claims that Nationwide breached the insurance policy by failing to pay the claim.

The Second Count claims a violation of the Connecticut Unfair Insurance Practices Act ("**CUIPA**"), the Third Count claims a violation of the Connecticut Unfair Trade Practices Act ("**CUTPA**"), the Fourth Count alleges negligence, the Fifth Count alleges breach of contract (incorporating allegations of the Second Count--CUIPA)

3

and the Sixth Count alleges breach of the implied covenant of good faith and fair dealing.

    C.    <u>Discovery at Issue</u>.

The plaintiff is seeking discovery as to information that is inherently work product or subject to a qualified privilege. Specifically, the plaintiff has issued a Notice of Taking Deposition Duces Tecum dated January 29, 2004 addressed to Jason Mumbach, Special Investigator of Nationwide (attached as Exhibit A).[1]

In the deposition notice, the plaintiff seeks Nationwide's "entire file' and its "final . . . report regarding said fire" as well as audio tapes and statements of witnesses. [2]

---

[1] The plaintiff has served the following additional discovery requests: January 16, 2004 First Set of Interrogatories and Requests for Production to defendant; plaintiff's January 29, 2004 Supplemental (Second) Set of Interrogatories and Requests for Product; and Requests for Admissions dated January 26, 2004.

[2] Nationwide has no objection to producing Mr. Mumbach or its cause and origin investigator for depositions or to producing the photographs and  video tapes to the extent they exist. The statements (except that of the plaintiff) are work product pursuant to Rule 26(b)(3).

4

## II.    DISCUSSION

A.    <u>Nationwide Is Entitled to a Protective Order Preventing Disclosure of Materials That Are Work Product or Protected by a Qualified Privilege, Including Without Limitation its Claims File</u>.

The claims file, or a substantial part thereof, is entitled to a "qualified privilege".

<u>See</u>, <u>Bartlett v. John Hancock Life Insurance Co.</u>, 538 A.2d 997 (R.I. 1988).   In

<u>Bartlett</u>, the court recognized that the insurance company's claim file was not subject

to discovery until after a determination as to whether there was coverage under the

subject insurance policy.

> Therefore, . . ., while the liability under contract for
> insurance is still at issue, certain documents in the
> defendant's claim file are protected by the qualified
> privilege . . . .  To grant total access to an insurer's claim
> file at this stage in the proceedings would irreparably
> prejudice the insurer's ability to defend itself on the
> contract.  Such irreparable prejudice can be avoided.

<u>Id.</u> at 999-1000.

<u>See</u>, <u>Corente v. Fitchburg Mutual Fire Insurance Co.</u>, 557 A.2d 859  (R.I. 1989);

<u>Bergenson v. National Surety Co.</u>, 112 F.R.D. 692 (D. Montana 1986).

In <u>Bartlett</u>, the court recognized the insurer's right to defend itself first against

the claim of breach of policy before being required to submit to discovery and trial on

5

the bad faith claim.  The court concluded that the trial judge was in error in:

> . . . ordering production of defendant's entire claims file based upon plaintiff's mere allegation of bad faith . . . . Allowing full disclosure of the insurer's claim file based solely on the plaintiff's allegations of bad faith would invite all plaintiffs to include a bad faith claim with every breach of contract.

> We therefore suggest the trial justices . . . who encounter this situation, exercise their authority . . . to sever the contract claim from the bad faith claim and limit discovery to the contract claim until that claim is resolved in plaintiff's favor.

Id. at 1002.

Once a determination is made that the issues of coverage and bad faith should be separately tried, as requested herein (Section II B), then discovery should be limited to issues relating solely to coverage.

For the same reasons, any depositions of representatives of Nationwide should be limited to facts relating to coverage issues (arson and misrepresentation), and plaintiffs' counsel should not be entitled to inquire as to issues relating to the claims process or the mental impressions, conclusions, or strategy of the defendant or its representatives.  Moreover, obtaining a ruling now on the scope of the deposition will avoid taking the deposition in a piecemeal  manner and having to raise

6

and seek resolution of objections during the deposition.  Rule 26(c) of the Federal

Rules of Civil Procedure allows a court to enter a protective order "(4) that certain

matters not be inquired into, or that the scope of the disclosure or discovery be limited

to certain matters" and "(2) that the disclosure or discovery may be had only on

specified terms or conditions . . ."  Accordingly, the deposition of Nationwide

employees should be confined to issues relating to coverage.

These requests seek far reaching discovery aimed primarily at the bad faith

and CUIPA claims and should not be  addressed until a ruling on the Motion for Stay.

The Motion for Stay, if granted, will render such discovery moot.  Nationwide should

not be subjected to the burden and expense of responding to discovery where such

discovery may be rendered moot by the granting of the Motion for Stay.  In addition,

disputes relating to the specific items of discovery will be avoided.

    **B.**    <u>Counts Two Through Six Should be Severed and Stayed Pending a
Resolution of Count One.</u>

        **1.**    <u>Coverage under the policy is a predicate for a finding of bad faith.</u>

An insurer cannot, as a matter of law, be found to have acted in bad faith in

denying a claim where the insured had no right of recovery under the contract.  <u>Oulds</u>

<u>v. Principal Mutual Life Insurance Co.</u>, 6 F.3d 1431 (10th Cir. 1993); <u>Sherrin v.</u>

7

Northwestern Nat. Life Ins. Co., 2 F.3d 373 (11th Cir. 1993); Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Insurance Company, 750 F.2d 1531 (11th Cir. 1985).

In St. Paul, the court found:

> A bad faith claim cannot lie unless "the insurer lack[ed] a legitimate or arguable reason for failing to pay the claim" . . . Southeast's bad faith claim had no basis because the record conclusively established that St. Paul had properly exercised its contract right in insisting that Southeast's claim be arbitrated. Thus, St. Paul clearly had a lawful reason for not acceding to Southeast's $275,000.00 claim.

Id. at 1536.

See, Bartlett v. John Hancock Mutual Life Insurance Co., 538 A.2d 997, 1000 (R.I. 1988) (there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the policy; to establish a claim for bad faith, the plaintiff must show the absence of a reasonable basis for denying benefits under the policy).

If Nationwide establishes that the plaintiff committed arson and are not entitled to coverage under the policy, then he would have no basis to pursue bad faith or CUIPA claims.

8

2.    Numerous courts recognize the need to defer litigation on the
      bad faith claim until coverage is resolved.

The trend in federal cases is in favor of severing the extra-contractual bad faith

claims from the claims under the policy.  See, Oulds v. Principal Mutual Life Ins. Co.,

6 F.3d 1431, 1435 (10th Cir. 1993) (where the court affirmed the district court's

decision bifurcating the bad faith trial from the coverage trial); O'Malley v. United

States Fidelity and Guaranty Co., 776 F.2d 494, 501 (5th Cir. 1985)("Since a recovery

on the bad faith claim would not have been possible unless [the insured] prevailed on

his coverage claim, the district court acted correctly in bifurcating the issues to avoid

prejudice and to expedite the trial."); American National Red Cross v. Travelers

Indemnity Co., 924 F.Supp. 304, 306 (D.D.C. 1996) (The court concluded that a

"determination . . . as to whether coverage exists . . . is a necessary first step before

any resulting determination may be made as to Travelers' bad faith."  The court

bifurcated the proceedings); U.S. Fire Insurance Co. v. Millard, 847 S.W.2d 668, 673

(Tex. App. 1993)(" It would be a waste of the court's, the jury's, the parties', and the

attorneys' time to hear evidence on the bad faith claims when a finding on the

contract lawsuit could be peremptorily dispositive . . .[lower courts] refusal to grant

separate trials and to abate the bad faith action was an abuse of discretion and a

9

violation of a plain legal duty."); <u>South Hampton Refining Co. v. National Union Fire Insurance Co.</u>, 875 F. Supp. 382, 884 (E.D. Tex. 1995) (where the court found "that the parties and the court will be best served by severing the contractual coverage issues from the claims of violation of the Insurance Code, bad faith, and negligence. In this manner, the goals of Rule 42(b) will be achieved and this court and the parties will not waste valuable resources attending to claims which could be disposed of by the determination of the insurance coverage."); <u>Schmidt v. California State Auto Association</u>, 127 F.R.D. 182, 185 (D. Nev. 1989) ("[T]he Court believes that severance could avoid potential prejudice, and that the duplicity engendered by severance will not be unduly burdensome.") <u>Aetna Cas. & Sur. Co. v. Nationwide Mutual Ins. Co.</u>, 734 F. Supp. 204, 208, 210 (W.D.Pa. 1989). ("We grant the motion [to bifurcate] because of the substantial risk of prejudice to [the insurer] from joining the coverage and bad faith issues. The issues of coverage will be tried first . . . The Motion to Bifurcate is granted. Trial of the coverage issue shall take place first. Trial of the bad faith issues shall follow.")

In <u>Corente v. Fitchburg Mutual Fire Insurance Co.</u>, 557 A.2d 859 (R.I. 1989), the Rhode Island Supreme Court held that:

10

> Since the burden of proof upon a bad faith claim is so formidable, we are of the opinion that whether or not  a discovery issue is involved, <u>it is inherently prejudicial for a trial justice to decline to sever that claim from a breach of contract claim</u>.  In essence, unless the trial justice finds that the plaintiff is entitled to recover on the breach of contract claim as a matter of law, there is no question for the jury on the bad faith claim. Consequently the trial justice erred in denying the motion to sever. We wish to make it very clear that issues of judicial economy do not warrant a trial of two such claims together.

<u>Id</u>. at 862. (emphasis added).

Thus, if the court ultimately concludes that Nationwide correctly denied the claim, then the discovery and trial of the bad faith and CUTPA/CUIPA claims become moot.  The parties should not be subjected to litigation on the bad faith claims until there is a determination that coverage exists.  Accordingly, allowing Counts Three through Six to proceed will cause serious confusion, inconvenience to the court and parties, excessive cost, and severe prejudice.

Rule 42(b), regulating separate trials, "is a valid regulation of procedure." Wright and Miller, <u>Federal Practice and Procedure</u>, § 2387 at 471. "Rule 42 may be applied in diversity cases even though the state law employed to determine the substantive issues in the case prohibits bifurcated trials." <u>Oulds</u>, <u>supra</u> at 1435.

11

Rule 42(b) of the Federal Rules of Civil Procedure provides for separate trials of claims contained in a single lawsuit "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."

> [T]he standards of convenience, avoidance of prejudice, and what will be conducive to expedition and economy are all in the alternative. Thus, they need not all be present for separation or severance, but the presence of any one of them is sufficient to sustain an order for a separate trial in the exercise of an informed discretion.

In Re: <u>Paris Aircrash</u>, 69 F.R.D. 310, 319 (C.D. Cal. 1975).

      3.    <u>Extensive discovery and discovery disputes could be avoided.</u>

The plaintiff recently filed a set of interrogatories and production requests, many of which are objectionable. Such discovery and discovery disputes could be avoided by severing and staying those claims. To the extent that Nationwide will ultimately need to respond to some of these requests, this burden could be avoided by severing and staying the bad faith and CUIPA claims.

Once a determination is made that the issues of coverage and bad faith should be separately tried, then discovery should be limited to issues relating solely to coverage. "The separate trial rule has an obvious relation to the discovery rule, since if a possibly dispositive issue is to be tried separately, the court, although it need not,

12

may limit discovery to that issue until after its resolution." Wright and Miller, <u>Federal Practice and Procedure</u>, § 2388 at 472-73. See, <u>Ellingson Timber Co. v. Great Northern Railway Co.</u>, 424 F.2d 497 (9th Cir. 1970) (Rule 42(b) permits the deferral of costly and possibly unnecessary discovery until resolution of potentially dispositive preliminary issues.)

See, <u>Bartlett v. John Hancock Mutual Life Insurance Co.</u>, 538 A.2d 997, <u>supra</u>, (bad faith claims severed from the coverage case). See, <u>Bergenson v. National Surety Corp.</u>, 112 F.R.D. 692 (D. Montana, 1986) (where the court separated the bad faith claim from the breach of contract claim and first determined the insurer's liability under the contract).

> Given the need for complete discovery to be afforded to all parties to the action, the interest of justice would best be served by bifurcating the bad faith claims from the remainder of the case and determining the liability issue first.

<u>Id</u>. at 697.

In <u>Heyman Associates No. 1 v. Insurance Co. of Pennsylvania</u>, 231 Conn. 756, 790 (1995), the Connecticut Supreme Court refused to allow the plaintiff to seek discovery in order to prove a sufficient general business practice. "Moreover, [plaintiff] contends that it should be entitled to obtain discovery on this issue to prove

13

a sufficient 'general business practice'. We are unpersuaded." Here, the plaintiffs are parroting the statutory language and filing onerous discovery requests in the hope that they may find evidence to support these allegations.

> 4.    Prejudice, confusion, and delay will be avoided.

The factual issues relating to bad faith and CUTPA/CUIPA will cause confusion to the fact finder and will unnecessarily complicate and prolong the litigation and trial. The fact finder will have its hands full with a lengthy trial relating to arson. This is to be compared with the issues in a bad faith case involving the process by which the insurance company made its decision or a CUTPA/CUIPA case which involves proof of a business practice including claims beyond the claim at issue. Such a trial could take months to conclude.

Allowing litigation on Counts Two through Six before coverage is resolved would cause severe and unfair prejudice. The evidence that the plaintiff would introduce on the bad faith and CUTPA/CUIPA counts may be inflammatory and would improperly influence the jury's decision on the basic coverage question.

> 5.    A determination of no coverage will be dispositive of the plaintiff's other claims

In determining whether to order separate trials, courts look to whether "a single

14

issue could be dispositive of the case." Wright and Miller, Id., § 2388, at 476. Here,

a determination of coverage (i.e. whether arson was committed by the insureds), will

be dispositive of all other issues. Thus, judicial economy and the convenience of the

parties would be furthered by having a separate trial on the dispositive issue

(coverage) before taking up the time of the parties and court on discovery and trial

relating to bad faith.

As a matter of law, the plaintiff cannot prevail on their extra contractual (bad

faith) claims until they show they are entitled to coverage. But as a factual matter as

well, the facts alleged in the plaintiff's bad faith claims necessarily assume that they

are not guilty of arson. Thus, whether the plaintiff committed arson or

misrepresentation is dispositive of all other issues.[3]

The plaintiff alleges in his bad faith claim, that Nationwide delayed the

adjustment process. However, if the plaintiff committed arson and there is no

---

[3] Nationwide denied the claim based upon compelling evidence that the
fire  was incendiary including the detailed report of a qualified fire investigator.
Thus, Nationwide is prepared to produce substantial evidence supporting its
denial of the claim.

15

coverage for his loss, then nothing would be due under the policy. Accordingly, the plaintiff would have suffered no damage by a delay in paying nothing.

The plaintiff argues that the evidence Nationwide relied upon was inappropriate, self-serving, or selective. But, which evidence is the weightier and more credible is precisely the issue the fact-finder will address in determining whether arson was in fact committed. If the fact-finder determines that the plaintiff committed arson, this would validate Nationwide's denial of the claim.

In sum, all of the plaintiff's bad faith allegations are premised upon their claim that Nationwide had no  basis to deny or delay payment of plaintiff's claim. If Nationwide does have a legal basis to deny the claim," then the bad faith claims would fail. Whether the plaintiff committed arson is dispositive of and should be resolved prior to the bad faith and other extra-contractual claims.

## III.    CONCLUSION

For the foregoing reasons, Nationwide respectfully requests that its Motion for Protective Order, Severance and Stay be granted.

16

DEFENDANT, NATIONWIDE MUTUAL
FIRE INSURANCE
COMPANY

By _____

    Michael Feldman, Esq.
    Feldman & Hickey, LLC
    10 Waterside Drive, Ste. 303
    Farmington, CT 06032
    Its Attorney
    Fed. Bar #ct 06649
    (860) 677-0551

## CERTIFICATION OF SERVICE

    I hereby certify that a copy of the foregoing was sent via facsimile and mailed via first class mail, postage prepaid on February 6, 2004, to the following:

Juri E. Taalman, Esq.
Timothy Brignole, Esq.
Brignole & Bush
73 Wadsworth Street
Hartford, CT 06106

Mary C. Pokorski, Esq.
Office of Corporation Counsel
City of New Britain
24 West Main Street
New Britain, CT 06051

_____
Michael Feldman

17

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | JANUARY 29, 2004 |

### RE-NOTICE OF TAKING DEPOSITION DUCES TECUM

The parties in the above-entitled action will take notice that the Plaintiff will take the deposition of Defendant's witness **JASON MUMBACH**, Special Investigator of Nationwide Mutual Fire Insurance Company, pursuant to §13-26, *et seq.*, of the *Practice Book*, on **February 26, 2004, at 10:00 a.m.**, before Fran Teti, Court Reporter, or other competent authority, at Brignole & Bush, 73 Wadsworth Street, Hartford, Connecticut 06106. Said deposition shall continue from day to day until complete. The deponent is further commanded to bring with him and produce at the same time and place the following:

1.     Your file and the **entire file** of Nationwide Mutual Fire Insurance Company relating to the investigation of the fire that occurred at 83 West Street, New Britain, Connecticut, on or about July 7-8, 2001, including, but not limited to, any and all reports, statements, memoranda, notes, correspondence, and any and all other documents relating to the investigation of said fire;

2.  Any and all photographs, videotapes and other graphic visual materials regarding said fire;

3.  Any and all audio tapes and statements of witnesses regarding said fire; and

4.  The final Nationwide Mutual Fire Insurance Company report regarding said fire.

PLAINTIFF, Tomasz Mierzejewski

BY _____
Juri E. Taalman, Esq.
BRIGNOLE & BUSH, LLC
73 Wadsworth Street
Hartford, Connecticut  06106
(860) 527-9973

2

## CERTIFICATION

This is to certify that the original of the foregoing was forwarded this 29th day of January, 2004, by first class mail, postage prepaid, and by facsimile to the following counsel and all *pro se* parties of record:

Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT 06032

Juri E. Taalman
Commissioner of the Superior Court

3