FILED

2004 FEB 26  P 2: 17

U.S...

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | FEBRUARY 25, 2004 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**PROTECTIVE ORDER, SEVERANCE AND STAY**

This Memorandum of Law is submitted by Plaintiff, Tomasz Mierzejewski, in opposition to

Defendant Nationwide Mutual Fire Insurance Company's Motion for Protective Order, Severance and

Stay.

**I.     FACTUAL BACKGROUND**

    **A.     The Fire and the Insurance Issue**

Plaintiff was the owner of premises located at 83 West Street, New Britain, Connecticut, which

premises contained a multi-story building that Plaintiff was in the process of renovating for use as an

apartment building and personal residence.  On the night of July7-8, 2001, a fire totally destroyed said

building.  The Plaintiff, who is a building contractor,  had obtained a loan from a financing institution

that gave Plaintiff a line of credit to pay for some of the costs of construction.  At the request of the

lender, the Plaintiff obtained fire insurance on the building through the Defendant, Nationwide Mutual

Fire Insurance Company. Some time in June, 2001, a few weeks before the fire, Nationwide asked Plaintiff to increase his fire insurance on the building to an amount commensurate with the anticipated value of the finished building, and Plaintiff did so.

The fire in question occurred on the night of July 7-8, 2001. Plaintiff's premises were located across the street from the local police station and were next to another apartment complex. Plaintiff's building, which he was in the process of renovating and turning into apartments and a residence for himself, was burned to the ground, even though firemen arrived shortly after the alarm was given. Plaintiff had gone to New York City on the afternoon of July 7, 2001, and learned of the fire early the next morning while he was on his return trip.

The Fire Marshal's office and the New Britain Police Department have conducted a lengthy and intensive investigation, lasting over two and a half years, including interviews with the Plaintiff. The fire still remains classified as being of undetermined origin. After more than two and a half years, both the New Britain Police Department and Fire Marshal's Office claim that the files are still open, although no charges have been brought against anyone. Plaintiff categorically denies causing the fire or having the fire set by someone acting on his behalf. Repeated requests by the Plaintiff's attorneys for the investigative files on the fire by the police and fire departments of New Britain have been denied by the Police Department and the Fire Marshal's Office.

After the fire, the Plaintiff made a claim for its loss under the fire insurance policy which was in full force and effect with the Defendant, Nationwide Mutual Fire Insurance Company.

BRIGNOLE AND BUSH, LLC • ATTORNEYS AT LAW
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS No. 419073

Instead of paying the claim, Nationwide, during the months of October and November, 2001, conducted

an examination of the Plaintiff insured under oath as to the circumstances with respect to the cause of

the fire and Plaintiff's whereabouts and doings before and after the time of the fire. Defendant, as part

of the examination under oath, obtained extensive information regarding Plaintiff's financial affairs,

the financing involved with Plaintiff's renovation efforts as to the building that had been destroyed,

Plaintiff's income taxes, invoices and payroll records, and other matters. Defendant also conducted

its own investigation into the fire and forwarded to the police and fire departments of the City of New

Britain, information it had obtained from the Plaintiff regarding the fire. The extent to which the

forwarding of such information was allowed under the pertinent statutes has not been determined.

The New Britain Fire Department has determined that the fire that destroyed the Plaintiff's

building was of unknown origin. More than two and a half years after the fire, no one has been arrested

or charged with setting the fire or having it set, although the Defendant claims that the fire was of

incendiary origin and has asserted in the pleadings that the fire was set by the Plaintiff or at his

direction. The Defendant has never provided the Plaintiff with any evidence to substantiate the claim

of the Defendant that Plaintiff abetted or committed arson, although on numerous occasions during the

Examination Under Oath, and at various times prior to Defendant's denial of the Plaintiffs' claim some

seven months later, the Plaintiff repeatedly and unsuccessfully requested that he be provided with such

evidence.

**BRIGNOLE AND BUSH, LLC** • *ATTORNEYS AT LAW*
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

The Defendant asserts that the pre-fire value of the property was $20,000, but ignores that this value was before renovation had been started and carried out by the Plaintiff. The Defendant claims that Plaintiff first made an initial claim to Nationwide in excess of $200,000, but fails to state that the Plaintiff thought he had to present evidence of the value of the building when finished, rather than its value at the time of the fire. Plaintiff subsequently filed an amended proof of loss. Defendant also does not mention that the insurance coverage was increased to over $200,000 at the suggestion of the Defendant's own insurance agent. Yet, on these bare facts, the Defendant baldly claims that "the Plaintiff financial motive for this fire is apparent." Defendant's Memorandum, p. 2.

The Defendant in its Memorandum also asserts that the fire was incendiary in nature, but does not state how it reached such a conclusion, although an inference may be made that it was by a process of elimination of factors. While an electrical or gas malfunction can be ruled out because utilities were not in the building, spontaneous combustion from various chemicals and substances that were in the building on that summer night cannot that easily be eliminated. Furthermore, Plaintiff himself has testified that he and some of his workers at various times before the fire, found evidence of smoking by possible persons unauthorized to be in the building, and that certain windows were only boarded up and entrance into the building could easily be obtained by removal of the boards. Vandalism by third parties could include the negligent or intentional setting of the fire, and since the fire is still of unknown origin, that appears to be a very likely possibility. Use of firecrackers by residents in an adjacent apartment building or others may also have been involved in starting the fire. No positive evidence of

-4-

the use of accelerant has been found and Defendant only speculates when it asserts, without a factual

predicate, that "substantial quantities of accelerant must have been liberally and intentionally spread

throughout the building." Defendant's Memorandum, p. 2. Construction of the building was incomplete

and much, if not most of the wooden framing was exposed.

The New Britain Fire Marshal and Police Department have had their investigative files open for

over two and a half years, and the fire still remains of unknown origin and no one has been charged with

any criminal activity.  The Police Department has previously indicated that their file is still open, but

it is clear that after such a lapse of time, the file must be treated as a cold case on which little or no

activity can be expected.

In the meantime, the Plaintiff still has not been paid for his insured loss based on the

unsubstantiated charge, made only by Defendant insurer, that this is a case of arson by or at the direction

of the Plaintiff.  Nationwide has long ago turned over whatever relevant information it has, including

evidence obtained directly from the Plaintiff,  to the New Britain Police, but the Police, both in their

own investigation and after review of the Defendant's information, have seen no basis to charge the

Plaintiff, or anyone else.

**B.** **The Complaint**

The Plaintiff's Complaint is in six Counts.  The Defendant is moving to sever the First Count

from the other five Counts of the Complaint.  The First Count claims that the Defendant breached its

policy of insurance with the Plaintiff by failing to pay a valid claim for fire loss on premises insured by

BRIGNOLE AND BUSH, LLC • ATTORNEYS AT LAW
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

the Defendant.  The Second Count alleges that Defendant's conduct in investigating the fire and its unjustified refusal to pay the claim constituted violations of the Connecticut Unfair Insurance Practices Act ("CUIPA").  The Third Count of the Complaint alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  The Fourth Count sets forth a claim in negligence; the Fifth Count sets forth a breach of contract claim and the Sixth Count alleges that Defendant breached the implied covenant of good faith and fair dealing.

The Defendant is seeking to have the First Count severed from the other Counts and asks for a stay in proceedings, including presumably discovery, as to the other Counts, pending a resolution by trial of coverage issues raised in the First Count.

### C.     <u>Discovery</u>

The Plaintiff has filed two sets of discovery requests directed to the Defendant: Plaintiff's First Set of Interrogatories and Requests for Production dated January 16, 2004 and Plaintiff's Supplemental (Second) Set of Interrogatories and Requests for Production dated January 29, 2004.  In addition Plaintiff has filed Requests for Admissions dated January 26, 2004.  On January 29, 2004, the Plaintiff also issued a Notice of Taking Deposition Duces Tecum directed to Jason Mumbach, Special Investigator for Defendant Nationwide.  (Attached as Plaintiff's <u>Exhibit A</u>).  The deponent has been directed to bring his (and Nationwide's) entire file relating to the investigation of the fire.

Defendant Nationwide is seeking a Protective Order with respect to Plaintiff's discovery requests seeking to obtain the contents of Defendant's investigative file, together with statements of

BRIGNOLE AND BUSH, LLC • ATTORNEYS AT LAW
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

witnesses, audio and video tapes, as well as the final report of Defendant's investigators, since the Defendant's investigation resulted in a denial of Plaintiff's claim for a fire loss under Defendant's policy based on the central allegation by the Defendant that the fire was intentionally set at the direction of the Plaintiff. The Defendant has also requested an additional thirty (30) days in which to respond to the Plaintiffs' discovery requests, and Plaintiff has consented to the same. The Defendant claims that the discovery sought is: (a) work product; (b) subject to a qualified privilege; and (c) irrelevant as to the allegations contained in the First Count (only).

For the reasons set forth hereafter, the Plaintiff, Tomasz Mierzejewski, maintains that the Defendant's Motion for a Protective Order, Severance and Stay is without merit as applied to this case. Furthermore, Defendant's claims that the information sought by the Plaintiff is work product and subject to a qualified privilege are without merit and without legal foundation in this controversy, in which the claim of an insured is being denied by the insurer.

## II.    **ANALYSIS AND DISCUSSION**

### A.    **Defendant Nationwide Is Not Entitled to a Protective Order Based on a Claim That Its Insured's File is Work Product or Protected by a Qualified Privilege When the Central Reason for a Denial of Coverage Defense is That, Based on the Defendant's Investigation, the Defendant Insurance Company Alleges that the Fire Was Intentionally Caused at the Direction of the Insured**

Defendant relies on non-Connecticut, lower court cases such as Bartlett v. John Hancock Life Insurance Co., 538 A.2d 997 (R.I. 1988) for the proposition that an insured cannot, in a suit against the insurer, determine by discovery the factual basis for the denial of his claim and that the insurer can raise

-7-

work product and qualified privilege as the basis for denying such discovery. In <u>Bartlett</u>, supra, at 999, the Plaintiff argued that the documents sought in Defendant insurer's file were of the utmost relevance in determining whether the defendant acted in bad faith. In this case, the documents are of the utmost relevance to the paramount reason for the denial of insurance coverage: the claim by the insurer that the Plaintiff insured caused arson to be committed.

The Plaintiff, Tomasz Mierzejewsi, maintains that in this case he is entitled to have access to the contents of the insurer's entire investigative file relating to the fire, which resulted in a conclusion by the insurer, Defendant Nationwide, that the Plaintiff intentionally set the fire or had the fire set at his direction. Such a charge by an insurer against its insured, if unfounded or based on an incomplete, biased, false or otherwise defective report or investigation, amounts to bad faith conduct by the insurer The arson charge directed against the Plaintiff is central to the coverage question. There is no question that the policy issued by the Defendant Nationwide was in full force and effect and that the loss was a covered loss, absent the claim of arson by or on behalf of the insured. If the arson, for example, were the result of vandalism by third parties unconnected with the Plaintiff, the claim would have to be paid, and the only issue that would then exist would be the amount of damages.

Even in a case where the claim by an insured was solely based on the alleged bad faith of the insurer, the courts have allowed the Plaintiff insured complete access to the insurer's claim file. See <u>Brown v. Superior Court in and for the County of Maricopa</u>, 137 Ariz. 327, 670 P.2d 725 (1983).

**BRIGNOLE AND BUSH, LLC** • *ATTORNEYS AT LAW*
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

In <u>Brown</u>, the court stated:

> bad faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. ... [I]n an action such as this, the need for the information in the file is not only substantial, but *overwhelming*." Id. (Emphasis in the original.)

This overwhelming need for information in the insurer's file is also present in this case, where the Plaintiff is making an otherwise valid claim under his fire insurance policy, but where the insurer refuses to pay and raises the inflammatory claim that its own insured intentionally committed arson or caused arson to be committed. In other words, the insurer is making the flagrant claim that its own insured committed a felony punishable by imprisonment, and on that basis is denying coverage. It should be noted that this allegation, that the insured Plaintiff is intentionally responsible for the fire because the fire was set by him or at his direction, is explicitly set forth in the First Affirmative Defense raised by the Defendant. <u>It is also important to note that this First Affirmative Defense has not been limited by the Defendant as being applicable to the First Count only, but applies to all the Counts of the Plaintiff's Complaint, including the breach of the implied covenant of good faith and fair dealing set forth in the Sixth Count.</u> This general application of the First Affirmative Defense undercuts the Defendant's claim that the First Count should be severed from the other Counts of the Plaintiff's Complaint. The claim of arson is, therefore, used by the Defendant not only a basis for the alleged denial of coverage, but as a defense to the other Counts of the Complaint as well. In responding to such a Defense by a denial, the Plaintiff must be permitted to prove that the allegations of arson are not only

-9-

untrue, and that the Defendant has made an insufficient and inadequate investigation and brought the charges of arson against the Plaintiff without factual or legal foundation and in bad faith.

The law is clear that the work product of an attorney covers the "written materials obtained or prepared by an adversary's counsel with an eye toward litigation..." and that it includes "interviews, statements, memoranda, correspondence, briefs, mental impressions [and] personal beliefs." <u>Hickman v. Taylor</u>, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "The burden of establishing that the information sought constitutes work product is upon the party asserting such a claim." <u>Carrier Corporation v. The Home Insurance Company</u>, 7 CSCR 823, 825 (June 12, 1992, Schaller, J.) The Defendant has made no showing that the contents of its investigative file were obtained or prepared with an eye toward litigation, rather than being a standard investigation of a claim.

Under Connecticut law and practice, an attorney's work product, if the court determines that the items sought are work product, may nevertheless be discovered upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Connecticut Practice Book Sec. 13-3; Fed R. Civ., Rule 26(b)(3). In this case it should be noted, the <u>only</u> allegation of arson directed against the Plaintiff comes from the Defendant, and such a conclusion is the result <u>only</u> of the Defendant's investigation of the fire. Only the Defendant has made the determination that Plaintiff allegedly *intentionally* set or caused the fire to be set. Defendant makes no claim of negligence on the part of the Plaintiff in the starting of the fire, since such conduct does not

-10-

bar payment under the policy. Moreover, neither the Fire Marshal nor the Police Department of New Britain have brought any charges of arson against the Plaintiff, or anyone else.

From the foregoing, in the face of this salacious charge which involves alleged criminal activity by the Plaintiff, the Plaintiff clearly has a substantial and overwhelming need for access to the investigative file of its own insurer to determine whether there is a factual and legal basis for such a serious allegation by the Defendant and to determine whether the investigation and conclusion of arson have any foundation in fact or law, or whether they were made by the Defendant in bad faith, in violation of regulations, and in reckless disregard as to their truth or falsity.

The type of protection from discovery sought by the Plaintiff and offered by Connecticut Practice Book Sec. 13-3 is termed a "qualified immunity" from discovery. Lott v. Seaboard Systems R. R., Inc., 109 F.R.D. 554,557 (S.D.Ga. 1985); see also Bird v. Penn. Central Co., 61 F.R.D. 43 (E.D.Pa. 1973) (court found that a sufficient showing of substantial need of sought-after work product was made by the defendant, since only through discovery of the information in the hands of the plaintiff and its agents could the defendant substantiate his defense). In this case, the Plaintiff needs access to the investigative file of the Defendant to determine whether Defendant the investigation and conclusion had any valid factual or legal basis or whether the Defendant acted irresponsibly, recklessly and in bad faith in charging the Plaintiff with arson and thereby denying his claim for fire loss and damages under the policy. This information is also essential to the Plaintiff to establish his claims under CUTPA and CUIPA. Bad faith actions against the insurer can only be proved by showing the underlying claims

-11-

process. <u>Bourget v. GEICO</u>, 48 F.R.D. 29. The information sought by the Plaintiff will shed light on the thoroughness and reasonableness of Defendant's actions and will enable Plaintiff to prove that the Defendant insurer's unfair acts were part of the insurer's general business practice in violation of CUIPA  The work product doctrine, it should be noted, specifically does not protect facts learned from documents or things. <u>Lott v. Seaboard Systems R.R. Inc</u>., supra, at 557.  It is significant to note that the Defendant Nationwide, prior to suit being brought by the Plaintiff, demanded <u>and</u> <u>received</u> complete access to the Plaintiff's financial and other records when it required the Plaintiff insured to undergo an extensive and thorough three days of examination under oath in October and November, 2001, regarding the circumstances surrounding the fire of July 7-8, 2001. In addition, the Defendant turned over the results of its investigation and file, including, it is believed, transcripts of the Plaintiff's examination under oath, to the New Britain Police Department.  The New Britain fire and police authorities had been investigating this case for two and a half years and had not brought any charges of any kind against anyone, including this Plaintiff.

Yet, to this day, the Defendant Nationwide still continues to refuse to honor its policy and still is the only entity that continues to claim that the Plaintiff intentionally set the fire or caused it to be set. The Defendant has consistently ignored or refused to acknowledge any possibility that the fire may have been intentionally or accidentally caused by vandals or other third parties, or by other means not in any way associated with the Plaintiff.

-12-

Finally, it should be noted that the Defendant's agents, servants and employees, having urged the Plaintiff to obtain additional insurance just weeks before the fire, the Defendant has made no claim that the insurance policy was not in full force and effect at the time of the fire, nor has it claimed the loss by fire was not an insured peril.

Significantly, Defendant Nationwide has not restricted its First Affirmative Defense, where it asserts that the Plaintiff intentionally set the fire or caused it to be set, to the First Count only. Accordingly, the First Affirmative Defense applies to all the Counts of the Complaint and is the core defense and very basis for denial of the Plaintiff insured's claim under the policy.  The flagrant claim by the insurance company Defendant that the Plaintiff committed arson or caused arson to be committed is inextricably interwoven with the Plaintiff's claim that the Defendant violated the covenant of good faith and fair dealing and acted in bad faith in making the arson charge and violated CUIPA and CUTPA  The Plaintiff insured, therefore, has an overwhelming need to have access to the entire file of the Defendant to see whether such a charge of arson against him is supported therein, or whether the Defendant acted irresponsibly, recklessly and in bad faith.  The information sought by the Plaintiff in its discovery requests and in the duces tecum requests associated with the depositions of Defendant's employees and representatives, is relevant and material to the issue of coverage as well as the Plaintiff's claims of bad faith, and violations of CUIPA and CUTPA by the Defendant.

Accordingly, the depositions of the Defendant's representatives should not be limited to coverage only, but since the charge of arson is being made by the Defendant insurer, the very basis of

-13-

that charge must be examined and inquired into.  The arson claim by the Defendant is not a general charge that a person or persons unknown caused or set the fire; rather, it is ominously and *prejudicially* specific:  that the Plaintiff himself set the fire or caused it to be set.  This charge by the Defendant has potentially serious consequences to the Plaintiff, if true.  This charge by the Defendant should also have serious consequences for the Defendant, if unfounded and not true or made in bad faith.  The mental processes, impressions and conclusions of the Defendant or its representatives are not only material and relevant in this case, but they are of paramount importance to the ultimate issues of both coverage and bad faith.  A charge of such magnitude and seriousness as arson against a specific person, adhered to by the Defendant insurer despite the lack of any charges from civil authorities, would, if untrue, unsubstantiated or unfounded, be prima facie evidence of bad faith by the Defendant.

The Defendant has chosen to use the claim of arson as a sword in this civil litigation; it should not be allowed to use it as a shield by a claim of work product or qualified privilege, when such a charge is based solely on its own investigation of the insured.

For all of the foregoing reasons the Plaintiff requests that the Defendant's Motion for a Protective Order be DENIED.

-14-

BRIGNOLE AND BUSH, LLC  •  ATTORNEYS AT LAW
73 WADSWORTH STREET  •  HARTFORD, CONNECTICUT  06106-1768  •  (860) 527-9973  •  FAX (860) 527-5929  •  JURIS NO. 419073

**B.**    **Counts Two Through Six Should Not be Severed and Stayed Pending a Trial on Count One**

1.    Coverage Issues Raised by a Claim of Alleged Arson by the Insured Are Inextricably Entwined With Issues of Bad Faith and Unfair Insurance Practices

Under Connecticut law, the bifurcation of trial proceedings lies solely within the sound discretion of the trial court. *Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co.*, 243 Conn. 402, 423, A.2d (1997). Swenson v. Saworska, 18 Conn. App. 597, 601 (1989). The authority of the court to bifurcate trial of issues is also established by Connecticut Practice Book Sec. 13-5 and Connecticut General Statutes Sec. 52-205.

The Defendant, Nationwide, has not cited a single case in its Memorandum, where an insurance company has denied coverage for an insured on the alleged grounds of *arson by the insured*, and where the court has subsequently allowed a severance of the coverage and bad faith issues raised thereby.    The reason is clear: in such a case, the issues of coverage and bad faith are inextricably entwined, and one cannot be severed from the other without resulting in prejudice. If the insurance company has no factual or legal basis for charging its own insured with arson, then making such an unsubstantiated charge is not only irresponsible, but *malum in se,* and certainly *prima facie* evidence of bad faith by the company.

In the cases cited by Nationwide in its Memorandum, a disclaimer of coverage can arguably be made in good faith and be based on circumstances arising out of the contract itself. In one case cited by the Defendant, an insurance company's insisting that a claim be arbitrated is not

-15-

necessarily an act of bad faith. *See* <u>Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Insurance.</u> 750 F. 2d 1531 (11th Cir. 1985). However, a charge by the insurer of criminal conduct against its own insured involves matters extra-contractual carries potentially grave consequences to both parties, depending on the underlying legal and factual basis on which such a charge rests. If a coverage issue based on an allegation of arson against the insured is resolved in favor of the insured, then the bad faith of the insurance company in investigating the claim and bringing the charge is necessarily called into question. The two issues are opposite sides of the same coin and one cannot be resolved without a simultaneous consideration of the other.

It would be highly prejudicial for the Plaintiff to have to fight a legal battle for insurance coverage where alleged arson is an issue, and at the same time be prohibited from simultaneously presenting to a jury the vital, material and relevant evidence of the manner in which the company investigated the claim before making such a serious charge. [This case, it should be noted, was claimed to a jury by the Plaintiff.]

Serious charges made in bad faith by one party against another to avoid performance of a contract should not be separated from their immediate remedy, a bad faith action by the other party. A severance of the contract claim from the bad faith claim, where a criminal charge is made by the insurer, would severely prejudice the Plaintiff, insured, by instantly bringing his reputation into question, but allowing the company to defer the crucial issue of bad faith in such a case to a later and separate trial.

-16-

If the Defendant's Motion to Sever were granted, the Plaintiff would be severely prejudiced in not only disproving arson, but in obtaining discovery as well. Severance would result in removing questions of motive, bias, negligence, recklessness and violation of regulations on the part of the insurance company from the case, to the clear advantage of the Defendant insurance company and to the severe detriment and prejudice of the Plaintiff. It would allow the inflammatory charge of arson to be litigated, but would keep from the jury any evidence of the manner in which the Defendant conducted its investigation, the sufficiency of the investigation itself, and Defendant's bad faith, motive, bias and prejudice in conducting such investigation and in concluding that arson formed the basis for denial of coverage.

Severance would pose further problems in discovery in that no specific orders can be formulated to create a bright line between the issues of non-coverage based on arson asserted by the Defendant and bad faith for claiming arson asserted by the Plaintiff. While Rule 26(c) of the Federal Rules of Civil Procedure contemplates a protective order that is reasonably restricted in scope where (4) "certain [specific] matters not be inquired into or that the scope of the disclosure or discovery be limited to certain [specific] matters" and (2) and that the disclosure or discovery may be had only on specified terms or conditions..." (Emphasis added), it would be virtually impossible to formulate such a rule in this case, where the claims of arson and bad faith are intertwined. It would totally emasculate the discovery process to attempt sever the substance of questions and documents evidencing coverage from those material and relevant to bad faith claims, since allegations of arson made by the insurer

-17-

against the insured affect both issues.

Furthermore, the Defendant's argument for severance would result in piecemeal depositions if the facts to be discovered were limited to whether arson occurred and did not include an examination to the totality of circumstances, including possible bad faith, bias and prejudice, that led the Defendant insurer and its representatives to conclude that the Plaintiff, and not some unknown independent third person, in fact intentionally set the fire. There is no discernible way to sever questions that might be asked or documents that would be examined and parse them according whether they impacted on issues of coverage or issues of bad faith, or both. Depositions would have to be delayed or postponed while judicial relief on disputed areas of discovery was obtained.

An insurance company that conducts an investigation that results in irresponsible and inflammatory charges by the insurer against an insured, charges that may result in criminal liability to that insured, must have its investigative conduct, including whether bad faith is involved, examined in a comprehensive proceeding and not piecemeal. To sever the Counts, would result in depositions where parties and their attorneys would have to raise and seek resolutions during the depositions and would create chaos.

There are certainly cases where the courts have held that the issue of bad faith may be deferred, at the discretion of the court, to a later time, but in all such cases the underlying coverage issue has involved questions of contractual obligations arising from the insurance contract itself. In those cases, the personally directed stigma of claimed criminal activity by the insured as the cause for denial

-18-

of coverage has not been involved. Severance of the contract claim from the bad faith claim, and the CUIPA and CUTPA claims in this case severely prejudices the Plaintiff insured who is trying to clear his good name, but must answer charges of arson, without the necessary discovery and evidentiary tools to show that he has been maligned and that the charges are groundless and made in bad faith by the insurer. To permit such severance would allow an insurer to "up the ante" in an insurance claim brought by the insured by including charges of fraud, arson, etc., as a special defense and then, if unsuccessful, having to pay only the covered loss, deferring any consequences from an unfounded charge to a later day in court, which the insured may be too exhausted emotionally and financially to pursue. Such a later action to recover damages for bad faith, as well as violations of CUIPA and CUTPA will mean additional discovery motions, depositions, time and expense, an unpalatable alternative for an insured who has already endured litigation to get his basic loss claim paid. In addition, as previously mentioned, it will be virtually impossible to segregate discovery that applies to coverage claims and discovery that implicates bad faith in a case where an inflammatory charge of arson is countered by a claim of bad faith.

While Rule 42(b) of the Federal Rules of Civil Procedure allows the federal court to bifurcate cases even though state law employed to determine substantive issues prohibits bifurcated trials, the application of a reasonable discretion by the court would strongly militate against separate trials in this case for the reasons aforesaid. By all the standards applied to determine whether a case should be tried piecemeal, it is clear that severing the trial of Count One of the Complaint from the other

BRIGNOLE AND BUSH, LLC • ATTORNEYS AT LAW
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

Counts in the present case, would not be convenient, would greatly prejudice the Plaintiff, would cause unnecessary delay and expense and would not be conducive to expedition or judicial economy. Rule 42(b) in this case mandates <u>against</u>, rather than for, severance.

2.    <u>Integrated Discovery is Necessary Where a Criminal Charge Against the Insured is the Alleged Ground for Denial of an Insured's Claim, Simultaneously Raising Issues Related to the Insured's Integrity on the One Hand and the Bad Faith of the Company on the Other</u>

There can be no adequate separation of the issues related to "solely" to coverage and those related to "solely" to bad faith in this case, as the Defendant Nationwide would have it. Defendant in its Memorandum has failed to show how this can be done in the present case, even if it were possible. No bright line division of such issues can be made in the present case. A charge of criminal activity such as arson, is a serious and inflammatory charge that immediately calls into question the character and reputation of the party so charged, in this case the insured. The issue cannot be left hanging in air, without considering the bad faith bias, motive, gain, prejudice or other factor that may be relevant to the party who made the charge, in this case the insurance company.

It is one thing to claim that arson by unknown vandals or third parties uninvolved with the insured may have set the fire that destroyed Plaintiff's premises. In such a case, the Defendant insurance company still has the contractual obligations to pay the claim as a covered loss under a valid and effective fire insurance policy. It is quite another matter for the insurance company to level, against the insured himself, an unmistakably criminal charge, that of arson, claiming that the insured <u>intentionally</u> [*see* Defendant's First Affirmative Defense] set the fire or caused others to do it. It is

-20-

absurd to believe that such a charge can be made and resolved solely within the context of a contractual claim, without severely prejudicing the Plaintiff insured, whose reputation has been put at stake but who, in a severed case, cannot defend himself by putting the bias, motivation, gain and the good faith of the insurance company in issue, or questioning whether or not it is violating CUTPA and CUIPA regulations in making such salacious and unfounded charges against the insured.

Discovery in this case is <u>integral</u> and necessary to both the arson charge which, if proven, would avoid obligations by the company under the contract, and to the charges of possible bad faith, negligent investigation, bias, and violations of rules and regulations, that resulted in such charges being brought against the insured. Discovery disputes would not be avoided if the Defendant's motion to sever were granted; rather they would be multiplied and the uncertain division line separating the issues, if it exists at all, would require constant objection and judicial resolution, as well as providing fodder for future appeals.

3. <u>A Severance Will Cause Sever Prejudice to the Plaintiff, Inconvenience, Delay and Unnecessary Duplication and Expense to the Parties and Will Not Promote Judicial Efficiency and Economy</u>

"The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency." O'Shea v. Mignone, 50 Conn. App. 577, 582, 719 A.2d 1176, cert. denied, 247 Conn. 941, 723 A.2d 319 (1998). In the present case severance of the First Count of the Complaint from the remaining Counts would be severely prejudicial to the Plaintiff, for the reasons previously stated, and would be a boon to the Defendant, since only coverage need be litigated and not the bad faith

-21-

or violation of regulations that resulted in a skewed investigation that resulted in an unsupported charge of arson against the Plaintiff.

The Defendant claims that the evidence that the Plaintiff would introduce on the bad faith, CUIPA and CUTPA counts "would be inflammatory and would improperly influence the jury's decision on the basic coverage question." The Defendant, however, totally ignores the inflammatory nature of the arson charge that it has brought against its own insured, and the prejudicial effect of that claim on the Plaintiff, if it has no factual or legal basis or was motivated by bad faith on the part of the Defendant. By severing the First Count and reducing the initial trial to a mere "coverage" question, the Defendant seeks to take from the Plaintiff the essential discovery and evidentiary rights to show that the charge is unfounded in law or in fact and is brought in bad faith by the insurance company.

A jury trying to determine the facts relating to coverage will be precluded from judging the Defendant's conduct, bias, motive and other factors that may determine the Defendant's bad faith in bringing the inflammatory charge of arson. Furthermore, the Plaintiff will be tied to litigating only the contractual provisions involving coverage, whereas arson alleged as an affirmative defense, is extra-contractual, i.e, it is a tort separate and independent of the contract of insurance itself and requires evidence that is outside the contract itself, including an examination of whether the investigation and charge are the product of bad faith conduct by the insurer.

If this case were severed, Plaintiff would not be able to adequately defend the charge of arson or to show that the Defendant's motivation was one of bad faith, recklessness, bias or other

-22-

**BRIGNOLE AND BUSH, LLC** • *ATTORNEYS AT LAW*
73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

prejudice, or violation of regulations that resulted in an inadequate, skewed or false investigation, leading to an unjustified and unsupported charge. If the First Count is severed, the Plaintiff will be deprived of the essential means of attacking a serious charge formulated from the Defendant's investigation, which investigation may have been affected by the subjective elements of bad faith, bias or prejudice against the Plaintiff. Furthermore, the Plaintiff will be unfairly and prejudicially restricted in discovery and documentary evidence and testimony and, due to such limitations, his claim may become vulnerable to subsequent dispositive motions filed by the Defendant.

The CUTPA and CUIPA claims necessarily involve the same type of bad faith inherent in the arson claims in that their violations would constitute unfair trade practices and unfair insurance practices respectively. These claims would not take months to prove, as the Defendant speculates. They should be resolved with the bad faith claim and the evidence adduced would be common to all the claims.

From the foregoing, it is clear that granting the Defendant's motion to sever Count One from the other Counts of the Complaint would severely and unfairly prejudice the Plaintiff and would be a major boon and advantage to the Defendant in discovery and trial. The jury would be improperly influenced in determining whether arson in fact occurred, since the Plaintiff will be severely circumscribed by testimony and evidence relating only to the contractual claims of the First Count and would not be able to question the motivation, including bad faith, gain, bias, or other prejudicial factors relating to Defendant's investigation and conclusions. Plaintiff will be fighting this legal battle with

-23-

both hands tied behind his back.

4.  The Defendant Seeks to Isolate the Plaintiff's Claim to a Mere Contract Dispute,
to Cripple His Discovery and Evidence and to Remove From the Trier of Fact
Any Consideration of Bad Faith, Negligence and Violation of Regulations
Associated With Defendant's Investigation of the Fire and Defendant's
Unfounded Charges of Arson Against the Plaintiff

The Fire Marshal and Police Department of the City of New Britain have had an open

investigation of the fire that destroyed the Plaintiff's premises for more than two years. Even though

Defendant has given unstinting information and assistance to these civic authorities which presumably

has augmented their own professional investigations, no charges of any kind, including arson, have been

filed against anyone, anywhere at any time during this investigation. Defendant is the _only_ party

making the outrageous claim that its own insured personally and intentionally committed arson, or

caused arson to be committed. But to date, the Defendant has failed to produce any evidence

whatsoever that the Plaintiff, as opposed to unknown vandals or other unrelated third persons,

intentionally (or accidentally) caused the fire in question, nor has the Defendant provided any rational

motive that would have compelled the Plaintiff to commit arson on property he was renovating for

commercial use and for his own personal residence and when he already had a full line of credit from

a financial institution to complete the work.

-24-

Defendant claims that a determination of <u>no</u> coverage would be dispositive of all other issues. Defendant fails to note that the determination of coverage cannot be fairly made by a bifurcation of the coverage claim where a charge of arson has been made, a charge which may be the product of bad faith conduct on the part of the Defendant. Severance would relegate this case in the first instance to a mere contract dispute and severely and prejudicially limit the Plaintiff in discovery as well as in the testimony and evidence he can muster to counter the unfounded charge of arson. Severance would also remove from the trier of fact any consideration of bad faith, negligence, recklessness and violation of regulations associated with Defendant's investigation of the fire and Defendant's subsequent unfounded charges of arson against the Plaintiff, all to the severe prejudice of the Plaintiff in this case.

It should be noted that Nationwide makes the limited assertion in its Memorandum that it denied the claim "based upon compelling evidence that the fire was *incendiary*," Defendant's Memorandum, p. 15. That conclusion alone, does not support the Defendant's First Affirmative Defense which claims that the fire was intentionally set by the Plaintiff or at his direction.

If the Defendant does have compelling evidence of arson by the Plaintiff or at its direction, then it cannot be substantially prejudiced if the other Counts of the Complaint are tried together with the First Count, and severance is unnecessary. If, as the Plaintiff claims, the Defendant's conclusion of arson is the result of bad faith conduct and investigation, then the coverage question based on arson cannot, without severe prejudice to the Plaintiff, be severed from the bad faith, CUIPA and CUTPA claims. Coverage in this case cannot be decided in a vacuum that isolates the Plaintiff's other

-25-

**BRIGNOLE AND BUSH, LLC** • *ATTORNEYS AT LAW*

73 WADSWORTH STREET • HARTFORD, CONNECTICUT 06106-1768 • (860) 527-9973 • FAX (860) 527-5929 • JURIS NO. 419073

claims which have a fundamental, relevant and material impact on the coverage issue. In either case, discovery and trial in this case should be on all the Counts together and the First Count should not be severed from the other Counts of the Complaint nor should discovery and trial on the other Counts be stayed.

**III.    CONCLUSION**

For all of the foregoing reasons, the Plaintiff, Tomasz Mierzejewski respectfully requests that the Defendant's Motion for Protective Order, Severance and Stay be DENIED.

PLAINTIFF, TOMASZ MIERZEJEWSKI

BY _____
Juri E. Taalman, Esq.
BRIGNOLE AND BUSH, LLC
73 Wadsworth Street
Hartford, Connecticut  06106
(860) 527-9973
Juris No. ct 09377

-26-

## CERTIFICATION

This is to certify that a copy of the foregoing was forwarded this 25th day of February, 2004, by

first class mail, postage prepaid, and by facsimile to the following counsel and all *pro se* parties of

record:

Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT 06032
(860) 677-0551
(860) 677-1147 (fax)

Mary C. Pokorski, Esq.
City of New Britain
Office of Corporation Counsel
27 West Main Street
New Britain, Connecticut 06051
(860) 826-3420
(860) 826-3397 (fax)

　　with a copy to:

The Honorable Stefan R. Underhill
United States District Court
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
(203)579-5714
(203)579-5704 (fax)

Juri E. Taalman
Commissioner of the Superior Court

-27-

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | JANUARY 29, 2004 |

## RE-NOTICE OF TAKING DEPOSITION DUCES TECUM

The parties in the above-entitled action will take notice that the Plaintiff will take the deposition of Defendant's witness **JASON MUMBACH**, Special Investigator of Nationwide Mutual Fire Insurance Company, pursuant to §13-26, *et seq.*, of the *Practice Book,* on **February 26, 2004, at 10:00 a.m.**, before Fran Teti, Court Reporter, or other competent authority, at Brignole & Bush, 73 Wadsworth Street, Hartford, Connecticut 06106. Said deposition shall continue from day to day until complete. The deponent is further commanded to bring with him and produce at the same time and place the following:

1.      Your file and the **entire file** of Nationwide Mutual Fire Insurance Company relating to the investigation of the fire that occurred at 83 West Street, New Britain, Connecticut, on or about July 7-8, 2001, including, but not limited to, any and all reports, statements, memoranda, notes, correspondence, and any and all other documents relating to the investigation of said fire;

2.  Any and all photographs, videotapes and other graphic visual materials regarding said fire;

3.  Any and all audio tapes and statements of witnesses regarding said fire; and

4.  The final Nationwide Mutual Fire Insurance Company report regarding said fire.

PLAINTIFF, Tomasz Mierzejewski

BY _____
Juri E. Taalman, Esq.
BRIGNOLE & BUSH, LLC
73 Wadsworth Street
Hartford, Connecticut  06106
(860) 527-9973

2

## CERTIFICATION

This is to certify that the original of the foregoing was forwarded this 29th day of January, 2004,

by first class mail, postage prepaid, and by facsimile to the following counsel and all *pro se* parties of

record:

Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT 06032

Juri E. Taalman
Commissioner of the Superior Court

3