FILED

2005 APR 25 P 2: 23

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | APRIL 22, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW REGARDING INFORMATION NOT DISCLOSED FROM INVESTIGATIVE FILE OF THE NEW BRITAIN POLICE DEPARTMENT**

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Attorney for the City of New Britain has filed an Objection in part to a subpoena duces tecum directing a Sergeant of the New Britain Police Department to produce the contents of the entire police file relating to a fire investigation which is the subject of the present civil case. The investigative files in question involve the police department investigation of a fire which occurred on Plaintiff's premises at 83 West Street, New Britain, Connecticut, on or about July 7-8, 2001. No one has been arrested or otherwise charged with criminal activity with respect to the fire. Plaintiff's premises were insured by the Defendant in this case, Nationwide

1

Mutual Fire Insurance Company. Defendant has refused to make payment on the Plaintiff's claimed fire loss, claiming, *inter alia* that the fire was incendiary in nature and either set by the Plaintiff, or by some third party acting at his direction.

Town Counsel for New Britain has objected to the production of two items in the police file: (1) an Affidavit and Application Search and Seizure Warrant relating to the Plaintiff Tomasz Mierzejewski and (2) a Criminal History Summary of a potential witness. The details relating to each document are discussed more fully hereafter. The Plaintiff claims that he is entitled by statute to obtain the conviction history of the potential witness as it appears on the Criminal History Summary but that the unsworn Affidavit(s) and Application for Search and Seizure Warrant, which were never submitted to a judge and which were never used as the basis for a Warrant, should not be disclosed for the reasons hereafter set forth.

II.   **LEGAL ANALYSIS**

   A.   **The Criminal History Summary of a Potential Witness Investigated by the Police Relative to the Fire Which is the Subject of This Civil Case Should be Disclosed**

Town Counsel for the City of New Britain argues that the Criminal History Summary of the potential witness ("Witness"), who was investigated by the New Britain Police with respect to the fire that is the subject of this civil case, need not be disclosed because the information therein could violated Section 54-142g, et seq. of the Connecticut General Statutes, which is

entitled Security and Privacy of Criminal Records. The Witness, who has a criminal record, was investigated as the result of an anonymous "tip" to Sergeant Wardwell who was advised by said anonymous source that the Witness had stated to him that he (the Witness) was involved in the fire on 83 West Street in New Britain, Connecticut. The Witness was then interrogated and gave a sworn statement that he was not at the scene of the fire. He volunteered to take a lie detector test, but none was conducted. The witness was not investigated further nor was a specific alibi determined as to his whereabouts on the night of the fire. The Witness had a Criminal Record Summary which was in the New Britain Police File but was not disclosed although a subpoena had originally been issued for the entire file.

Connecticut General Statutes Sec. 54-142k provides that "(a) Each person or agency holding criminal history record information shall establish reasonable hours and places of inspection of such information. (b) Conviction information <u>shall be available to the public for any purpose</u>." (Emphasis added).

The Plaintiff accordingly is entitled to the conviction information relating to the Witness as it appears on the Criminal History Summary. The Summary can be redacted to provide only the conviction record as it appears. The Court is empowered to conduct an in camera inspection of the Criminal History Summary to determine what material may be disclosed.

The Plaintiff represents that if said Witness was involved with the fire as he had allegedly

3

stated to the anonymous source that communicated same to Sergeant Wardwell, then the Witness' conviction history showing, conviction on possible drug charges, arson or breaking and entering would be relevant and material to one of the theories advanced in this case, that some unknown person broke into the Plaintiff's building on 83 West Street and started the fire in question.

### B. The Application for Search Warrant and Unsworn Affidavits Purportedly in Support Thereof Should Not be Disclosed.

Town Counsel for the City of New Britain has made four assertions regarding the Affidavit and Application for Search and Seizure Warrant that is being sought by the Defendant Mutual Insurance Company in the present civil case with Tomasz Mierzejewski:

1. The document is a draft that was never presented to a judge.

2. The document was shown to the State's Attorney's Office, but was not presented to a judge, and therefore it is not an official document in the file.

3. The police investigation is still open and release of the draft could be prejudicial to the investigation.

4. The document has no relevance to the underlying case.

Connecticut General Statutes Sec.. § 54-33c states, in part, that copies of search warrant applications and supporting affidavits must be filed with the clerk of the court no later than the next business day following the execution of the warrant. Courts have ruled that, "[b]y

4

necessary implication, all such documents *become public records* upon filing in the clerk's office except that, pursuant to C.G.S. § 54-33a. 'Prior to the execution and return of the warrant, the clerk of the court shall not disclose any information pertaining to the application for the warrant or any affidavits upon which the warrant is based.'" In re Search Warrant For Death of O'Brien 2000 WL 1784353, *1(Conn.Super.,2000) (Emphasis added.)

Since Town Counsel has stated that the Affidavit and Search and Seizure Warrant was never presented to a judge, it could not be served, nor could it become a public document pursuant to Connecticut General Statutes. The document, however, was presented to the State's Attorney's Office, presumably for review, and since a subsequent presentation to a judge was not made, the implication is that the State's Attorney deemed it insufficient for purposes of obtaining a search warrant. No subsequent effort to obtain a warrant was made. To this day, almost four years after the fire at 83 West Street, no one has been charged or arrested as a result of that incident.

Connecticut General Statutes Sec. 54-33c provides a method for the Court to determine whether an application for a warrant for which disclosure is sought should be released.. The statute provides in pertinent part:

> The judge or judge trial referee may, by order, dispense with the requirement of giving a copy of the affidavits to such owner, occupant or person at such time if the applicant for the warrant files a detailed affidavit with the judge or judge trial referee which

5

demonstrates to the judge or judge trial referee that (1) the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time, or (2) the search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time, or (3) the giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a.

In the aforementioned case of In re Search Warrant For Death of O'Brien, 2000 WL 1784353 (Conn. Super. 2000), the Court gave the state an opportunity to present the Court with an in-camera review of any documentation from which the court could reasonably find that non-disclosure of the application for a warrant was justified. In that case the warrant had been issued and the statute required the filing of copies of the search warrant applications and supporting affidavits with the clerk of the court no later than the next business day following the execution of the warrant. Id., at *1. Once filed, the documents would have become public documents accessible by anyone.

A similar method of in camera inspection may be used by the Court to determine whether the Affidavits and Application for a Search Warrant (hereafter "Documents") can or should be disclosed in this case. It should be noted that there is a material difference in the Documents in this case from those documents (Affidavits and Application for Search Warrant) in In re Search Warrant for Death of O'Brien. The Documents here represent what amounts to raw data gathered in the course of an ongoing investigation. Such data is unsupported by sworn affidavits

6

and apparently was not considered sufficient by the State's attorney's office to obtain a warrant. The Documents were in draft form, according to Town Counsel, and likely were returned with blue penciling and internal notations by the State's Attorney as to what was needed or what was lacking.

An in-camera inspection of the Documents by the Court will undoubtedly settle the threshold questions of relevancy and materiality. The question still remains whether the Documents constitute undocumented and unverified raw data which is not part of the official file and whether their release would be prejudicial to the investigation.

Here again, the Town Attorney or the applicants for the warrant can file a detailed affidavit, see Conn. Gen. Stat. Sec. 54-33c stating the grounds for sustaining non-disclosure, i.e. that (1) the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time, or (2) the search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time, or (3) the giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a, which involves wiretapping and electronic surveillance.

Finally, the Court must consider the nature of the material itself, whether it is part of the

7

official file or whether it constitutes raw, uncorroborated data which, if disclosed, violates the privacy rights of the person to whom it pertains and/or causes substantial prejudice to that party. Generally, the rules of civil discovery are liberally construed. Lougee v. Grinnell, 216 Conn. 483, 489, 582 A.2d 456 (1990); Sanderson v. Steve Snyder Enterprises, Inc., 196 Conn. 134, 140, 491 A.2d 389 (1985). However criminal investigative files involving an individual are similar to personnel files of that individual. Historically, courts have been reluctant to permit extensive disclosure of personnel files, noting that such disclosure "would place in the hands of a [party] irrelevant or personal and sensitive information concerning ... [another], the entire file should not be disclosed. No ... [party] has the right to conduct a general 'fishing expedition' into the personnel records of a[nother]. Any request for information that does not directly relate to legitimate issues that may arise in the course of the ... [trial] ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said: 'It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility.' People v. Sumpter, 75 Misc.2d 55, 60, 347 N.Y.S.2d 670 (1973). Because discovery of matters contained in a ... personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in

8

determining what matters shall be disclosed. An in camera inspection of the documents involved, therefore, will under most circumstances be necessary. See United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Commonwealth v. Dominico, [1 Mass.App.Ct. 693, 306 N.E.2d 835 (1974) ]; People v. Bottom, 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974).

Similarly a criminal file which contains information about a person under investigation, but who has not been charged, often contains irrelevant or personal and sensitive information about that person which is uncorroborated and undocumented, and may or may not be true. Here also, discovery matters require careful discrimination by the Court between material that relates to the issues involved and that which is irrelevant to those issues. This, too, necessarily requires that the Court conduct an in camera inspection of the documents involved. See United States v. Nixon, supra.

The Supreme Court of the United States has declared:

"Because of the liberality of pretrial discovery permitted by ... [Practice Book § 216 et seq.], it is necessary for the trial court to have authority to issue protective orders conferred by ... [Practice Book § 221]. It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.... There is an opportunity, therefore, for litigants to obtain--incidentally or purposefully-- information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.... The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." (Footnotes

9

omitted.) <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34-36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)

Accordingly, the Court in this case may issue protective orders where, on an in camera inspection, it finds such orders appropriate to prevent the disclosure of irrelevant and immaterial information or to prevent release of uncorroborated material that can be damaging to reputation and/or privacy of the individual to whom such material may pertain. <u>Id</u>.

"Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law.... Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (Footnote omitted.) <u>Seattle Times Co. v. Rhinehart</u>, *supra*, 467 U.S. 33.

In the present case, the Affidavits supporting the Application for Search Warrant are unsigned and/or unsworn. The Town attorney who has seen them believes that the information they contain is not relevant to the underlying civil case. Counsel for the Defendant Nationwide Insurance Company can demonstrate no substantial need for such hearsay material in this civil case involving the Plaintiff's claim for payment insurance proceeds for a fire loss. An application for a search warrant was never made to a judge, the search warrant never issued

10

against the Plaintiff and the Plaintiff has never been arrested or charged with respect to the fire on his premises.

Accordingly, unsubstantiated raw data from criminal investigation records injected into this civil case via discovery can only serve to embarrass and annoy the Plaintiff, to invade his privacy and to serve to incorporate irrelevant and immaterial issues outside the framework of the pleadings. The Court should examine the Documents in camera. The disclosure of the Application for a Search Warrant, together with the unsworn Affidavits purporting to support it should, therefore, be DENIED, and an appropriate protective order entered.

## CONCLUSION

For all of the foregoing reasons the Objection to the Defendant Nationwide Insurance Company's subpoena for the Application for Search Warrant and the purported unsworn Affidavits in support of said Application should be DENIED. However, the conviction record in the Criminal History Summary of a potential witness should be revealed as a relevant and material public record, subject to an in camera inspection by the Court.

PLAINTIFF, Tomasz Mierzejewski

BY *[signature]*

Juri E. Taalman, Esq.
BRIGNOLE & BUSH, LLC
73 Wadsworth Street
Hartford, Connecticut 06106
(860) 527-9973
Juris No. ct 09377

12

## CERTIFICATION

This is to certify that a copy of the foregoing was forwarded this 22nd day of April, 2005, by facsimile and first class mail, postage prepaid, to the following counsel and all *pro se* parties of record:

Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT 06032

Mary C. Pokorski, Esq.
City of New Britain
Office of Corporation Counsel
27 West Main Street
New Britain, Connecticut 06051

Juri E. Taalman
Commissioner of the Superior Court

13

Westlaw.

Not Reported in A.2d

2000 WL 1784353 (Conn.Super.)

Page 1

**(Cite as: 2000 WL 1784353 (Conn.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
IN RE Application for SEARCH WARRANT Re: The DEATH OF Richard Richard O'BRIEN.
**No. 4875W.**

Nov. 3, 2000.

MEMORANDUM OF DECISION

BISHOP.

*1 The State's Motion to seal the search warrant, supporting affidavits and return is denied for the following reasons:

1. In a prior proceeding involving the identical documents, this court granted a motion filed by the Hartford Courant to order the subject records unsealed. The court's order is currently on appeal to the Appellate Court. As a consequence, the court's order granting the Hartford Courant's motion is presently stayed. Therefore, the State's motion is not ripe for determination.

2. Additionally, the provisions of PB § 42-49 do not enlarge the authority of the court regarding search warrants beyond its statutory authority pursuant to C.G.S. § 54-33a. C.G.S. § 54-33c states, in part, that copies of search warrant applications and supporting affidavits must be filed with the clerk of the court no later than the next business day following the execution of the warrant. By necessary implication, all such documents become public records upon filing in the clerk's office except that, pursuant to C.G.S. § 54-33a. "Prior to the execution and return of the warrant, the clerk of the court shall not disclose any information pertaining to the application for the warrant or any affidavits upon which the warrant is based." This statute further requires that search warrants be executed and that copies of the warrant and supporting documents be delivered to the individuals whose property has been searched within specified time periods. As exceptions, the court may dispense with the delivery requirement upon a finding that delivery would jeopardize the safety of a confidential informant, would adversely affect a continuing investigation, or would require disclosure of information protected by Chapter 959a. In this case, while the original order of 1983 dispensing with the requirement of delivery was ordered in 1983 when the (then) existing statute had no outside time period for such dispensation, this court believed it correct to apply the present language limiting the period of dispensation, but the court gave the state an opportunity to present the court with an in-camera review of any documentation from which the court could reasonably find that any of the bases for dispensing for delivery persists. As justification for its resistance to the Hartford Courant's motion the state acknowledged that the life of no confidential informant was in jeopardy, there was no involvement of Chapter 959a, and the state could say only that disclosure might adversely affect an ongoing investigation. Since the state's claims did not meet the exception requirements of C.G.S. § 54-33c, this court granted the Hartford Courant's motion.

3. During the hearing on the Courant's motion, the court and counsel engaged in a colloquy regarding the applicability of PB § 42-49 to the Courant's motion. While the state indicated its belief that PB § 42-49 did not pertain, the state argued that its interest in preserving the confidentiality of ongoing investigations justifies its general view that the public has no right of access to executed search warrants and accompanying documents filed in the clerk's office prior to an arrest. The court disagrees.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 2

2000 WL 1784353 (Conn.Super.)

**(Cite as: 2000 WL 1784353 (Conn.Super.))**

Even if the language of PB § 42-49 broadens the court's authority to order closure of files beyond the statutory provisions of § 54-33c, the interests identified by the state in protecting secrecy and privacy are not greater than the public interest in the openness of judicial proceedings and the public confidence such openness engenders.

2000 WL 1784353 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.