FILED

2005 SEP 29 P 12: 59

UNITED STATES DISTRICT COURT U.S. DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT BRIDGEPORT, CONN

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | : | CIVIL ACTION NO. 302CV752 (SRU) |
| | : | |
| V. | : | |
| | : | |
| NATIONWIDE MUTUAL FIRE | : | |
| INSURANCE COMPANY | : | SEPTEMBER 28, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.    BACKGROUND

A.    Introduction

On July 7, 2001, a fire occurred at property (the "Property") owned by the plaintiff located at 83 West Street, New Britain, Connecticut. The Property was a three-family residential structure which was vacant, unoccupied and in the process of substantial renovations. The plaintiff has made a claim under a homeowner's insurance policy with the defendant Nationwide Mutual Fire Insurance Company ("Nationwide").

The plaintiff's policy with Nationwide however, is void, as a matter of law, for at least one of the following reasons: (1) the plaintiff submitted a sworn proof of loss containing material misrepresentations relating to the scope of the loss and seeking to be paid for items that were not present in the house and therefore not damaged by the fire; and (2) the plaintiff submitted an insurance application to Nationwide which contained false, material

FELDMAN & HICKEY, LLC • ATTORNEYS AT LAW • 10 WATERSIDE DRIVE, SUITE 303
FARMINGTON, CONNECTICUT 06032-3084 • (860) 677-0551 • FAX (860) 677-1147

information relating to the occupancy of the building. No genuine issues of material fact exists as to these two issues.

Nationwide also claims other grounds exist that justify the denial of the plaintiff's claim, including that the plaintiff was responsible for causing the fire. However, for purposes of this Motion, Nationwide acknowledges that issues of fact exist as to the intentional act issue and that, in the event that summary judgment is not dispositive of this case based upon the misrepresentation issues, a trial will be necessary on the intentional act and other issues.[1]

B.    Misrepresentations Relating to the Sworn Statement in Proof of Loss

During October 2001, the plaintiff submitted to Nationwide his sworn statement in proof of loss signed and sworn to on October 4, 2001. Exh 2. Along with the proof of loss, the plaintiff submitted a separate document entitled sworn proof of loss signed and sworn to on October 19, 2001 with five attached exhibits detailing the amount of the loss. Exh. 3. In this document the plaintiff stated:

2. This document has been read to me in both English and Polish, and I fully

---

[1]Exhibits referenced herein are attached to the Affidavit of Charles Meyers dated September 28, 2005. Copies of unreported decisions are attached hereto as Tabs A, B and C.

2

understand the contents of this document and represent that this document is my sworn proof of loss submitted to my insurance company, Nationwide Insurance Company, pursuant to Section I <u>Conditions</u>, subsection 2.(e)., in accordance with the policy coverages and provisions.

Exh. 3.   The sworn proof of loss indicates at ¶5:

<u>Detailed estimates for repair of damage</u>.  Attached is a schedule entitled "Estimate of a Three Family House with a Size: 44 x 28" in the total amount of $269,173.00.  <u>This estimate itemizes each of the costs for repair of said damage.</u>  See attached Exhibit "A".

(emphasis added).  Many of these items could not have been damaged, since they did not exist in the house.

In the sworn statement and proof of loss, Exh. 2, at ¶7 the plaintiff claimed $285,673.00 for the whole loss and damage, including $269,173.00 as dwelling.  In the detailed statement, Exh. 3,  the plaintiff provided an estimate totaling $269,173.00 for the reconstruction of the dwelling.

In Exhibit A to the sworn statement, Exh. 3, the plaintiff itemized the building damages totaling $269,173.00.  Of this amount, over $100,000.00 were for items that did not exist in the house prior to the fire, and were therefore not damaged.  Yet plaintiff submitted a sworn claim for insurance payments from Nationwide for said amounts.  The building was gutted, without utilities and in the process of reconstruction at the time of the

3

house.  The house had no electricity and yet the plaintiff sought $18,000.00 for an electrician.  The house had no insulation or sheet rock, and the plaintiff sought $6,000.00 and $13,750.00 respectively for these two items.  The plaintiff also requested $10,500.00 for painting, and $4,500.00 for trim.  See. EUO Tr., Exh. 1, pp. 108-109.

In November, 2001, the plaintiff submitted an amended proof of loss in which he deleted over $100,000.00 from the original dwelling claim, Exhs. 4 and 5.  This was done, only after these "errors" were pointed out to him at his examination under oath.  EUO Tr., Exh. 1 at pp. 108-109.

C.    <u>Misrepresentations Relating to the Application</u>

The homeowner's insurance application Exhibit 6, indicates the following:

(1)    "<u>Owner</u> occupied ";

(2)    "Currently occupied <u>Y</u>"; and,

(3)    "No. of occupants <u>2</u>".

The application also shows the insured's address to be 83 West Street, New Britain, Connecticut.  The application was signed by the plaintiff and dated January 29, 2001.

Each of the foregoing representations by the plaintiff in his insurance application were false.  At his examination under oath, the plaintiff testified that he had never lived at

4

83 West Street, New Britain, that none of his family members had lived there, that he never had a tenant or received any rent.  See, Excerpts of Transcript of the Examination Under Oath of Tomasz Mierzejewski ("EUO Tr.") November 1, 2001 pp. 8-14, Exh. 6.  Nor was there any electricity, gas or other utilities serving the property, thereby making it uninhabitable.  Thus, the plaintiff's representations in the insurance application that the property was currently occupied, that it was owner occupied, and that it had two occupants, were false.

II.    DISCUSSION

A.    Material Misrepresentations in the Sworn Proof of Loss Renders the Policy Void

The plaintiff submitted sworn poofs of loss dated October 4 and October 19, 2001 claiming damages to items that did not exist at the time of the fire.[2]  The building was gutted and undergoing substantial renovations.  Yet the plaintiff's claim included damages for items - - not present in the house - - including: thirty-six interior doors ($7,920.00), electrical ($18,000.00), insulation ($6,000.00), sheet rock ($13,750.00), painting

---

[2]The Policy, Section I and Section II - Conditions, states: "2. Concealment or Fraud. We do not provide coverage for an insured who has by design concealed or misrepresented a material fact or circumstance relating to this insurance."  See Policy attached to the Complaint as Exh. A.

5

($10,500.00), trim ($4,500.00) and "outside elevation ($40,320.00). The total amount claimed in the sworn proof of damages to items that did not exist, exceed $100,000.00 - - or more than one third of the total claim. The excessive amounts were brought to the plaintiff's attention at his examination under oath. EUO Tr. Exh. 1 at pp. 108-109. Thereafter, he submitted a new sworn proof of loss, reducing the dwelling claims from $269,173.00 to $163,183.00 (for a total reduction of $105,990,00) and omitting items such as doors, insulation, sheet rock, painting and trim. Compare Exhs. 2 and 3 with Exhs. 4 and 5. Fraud, once committed, cannot be so easily cured.

The caselaw is clear that an insured many not simply "fix" a fraudulent claim and expect to be paid the valid amount of the claim.

> This court has recently held that a loss claim which is 'grossly exaggerated and false' constitutes a 'fraudulent, intentional and material misrepresentation which void[s] the policy'. G & M Auto Supply Inc. v. The American Fid. Ins. Co., No. B-2-217 at 5 (RCZ) (D.Conn. October 11, 1990).

Allstate Insurance Co. v. Priga, 810 F.Supp. 373, 376 (D.Conn. 1992). See, Lomartira v. American Automobile Insurance Co., 245 F.Supp. 124 (D.Conn. 1965) (misrepresentations relating to improvements to property are material); Federal Insurance Co. v. Bloodworth, 1987 CCH Fire and Casualty Cases 151, 152 (where the Court, Daly, J., held that concealment and misrepresentations relating to the value of allegedly stolen property were

6

material).

The consequence of an intentional misrepresentation is that the policy is void. Neither Connecticut law nor the subject insurance policy allow for recovery of the reduced, actual value of the claim, as this would merely encourage fraudulently inflated claims.

In Ofstein v. Nationwide Mutual Insurance Co.. 5 Conn. Ops. 585 (May 5, 1999) (attached hereto) Judge Aurigemma provided a sound analysis for this rule of law:

> The concealment or fraud provision clearly provides that the penalty for making false statements is a voiding of the entire policy. While the result may seem harsh, the rationale for such a penalty is to 'ensure that the parties will deal fairly and honestly with each other.' *Morgan v. Badger Mut. Ins. Co.,* 181 F.Supp. 496, 499 (D.C. Fla. 1960). The basis for this rationale was articulated more than one hundred years ago:
>
>> The insured is presumed to know better than anyone else the value of his property and the amount of his loss, and is bound to make his statement of loss honestly, without any attempt to obtain more than his actual damages; and this rule of law [that] thus defeats all claims, unless honestly made, is intended to protect insurance companies from frauds which might otherwise be perpetrated on them. It is a rule which can do an honest man no harm.
>
> *Hunchberger v. Home Fire Ins. Co.,* 12 F. Cas. 793 (C.C.. Ill. 1870).
>
> This rationale has been reaffirmed in more recent cases. In *Longobardi v. Chubb Ins. Co. Of New Jersey,* 582 A.2d 1257, 1261, 121 N.J. 530 (1990), the New Jersey Supreme Court held that:

7

misrepresentations [made during the insurer's post-loss investigations] strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims.

In *American Diver's Supply & Manufacturing Corp. V. Boltz,* 482 F.2d 795, 798 (10th Cir. 1973), the United States Court of Appeals for the Tenth Circuit held that:

While discovered misrepresentations do not normally result in penalties to the unsuccessful defrauder—other than losing the unjustified benefits of whatever action he sought to induce—that situation is unlike the case where the attempted defrauder is also expecting the insurance company to comply with the reimbursement provisions of a contract which they have entered into. The penalty for attempted fraud in an insurance case where a fraud clause exists, on the other hand, is not simply forfeiture of the excess of inflated recovery amount but the voiding of all actual loss benefits as well. But we cannot accept this as too harsh a consequence in view of the insured's being put on notice and the alternative of encouraging 'an everything-to-win, nothing-to-los proposition' for the insured.

B.    Material Misrepresentations Contained in the Insurance Application Render the Policy Void

In Pinette v. Assurance Company of America, 52 F.3d 407, (2d Cir. 1995) aff'g __

F.Supp. __, Civil No. 291 CV 01186 (AVC) (D.Conn April 13, 1994)(Covello, J.) (District

Court opinion attached), the Second Circuit Court of Appeals affirmed the Connecticut

District Court's granting of summary judgment in favor of an insurer.    There the

8

homeowners policy was void due to misrepresentations contained in the application relating to prior losses. Under the section "Loss History" of the insurance application, the word "None" appeared, even though two years earlier the insured's home had been destroyed by fire. Judge Covello granted summary judgment in favor of the insurer based upon these material misrepresentations and the Second Circuit affirmed. The Court stated:

> Under Connecticut law, an insurance policy may be voided by the insurer if the applicant made `[m]aterial representations . . ., relied upon by the company, which were untrue and known by the assured to be untrue when made.' State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co., 109 Conn. 67, 72, 145 A. 565, 567 (1929).

Pinette v. Assurance Company of America, Id. 52 F.3d at 409.

"Matters made the subject of special inquiry are deemed conclusively material." State Bank & Trust Co. v. Conn. General Life Ins. Co., 109 Conn. 67, 71 (1929). "Connecticut caselaw strongly suggests that an answer to a question on an insurance application is presumptively material."

Pinette, supra at 411.

> (Where a misrepresentation is an answer to a question on an application, inquiry and answer are tantamount to agreement that the matter is material.); see also, Cyclopedia of Insurance Law Section(s) 35:140, at 237 n.2 (citing State Bank & Trust). Thus, in addition to the character of the information

9

misrepresented, the fact that the application in this case specifically requested the information supports the District Court's finding of materiality.

Pinette, supra at 411.

Under Connecticut law, a misrepresentation is material "when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." Pinette, supra at 411.

Here, the misrepresentations contained in the application are as serious as those in Pinette.

"[K]nowing material misrepresentations render the resulting insurance policy invalid regardless of any intent to defraud. Guariglia v. John Hancock Mutual Life Insurance Co., 139 Conn. 54, 90 A.2d 162, 163 (Conn. 1952)."

That the misrepresentations contained in the plaintiff's application were knowingly made cannot be genuinely disputed.  Plaintiff knew that he did not live at 83 West Street and that the property was vacant.

When Connecticut courts speak of 'innocent' misrepresentations, they generally have in mind the situation in which the applicant does not know that the information he is providing is false.

Pinette, at 410.

10

The Connecticut Appellate Court recently reaffirmed these principles in <u>Paul Revere Life Insurance Co. v. Pastena</u>, 52 Conn. App. 318 (1999), where the court affirmed a summary judgment ruling rescinding an insurance policy on the grounds of application misrepresentation. There, the insured claimed that the insurance company's agent who filled out the application included incorrect information therein.

> The trial court properly concluded, as a matter of law, that the defendant knowingly made the misrepresentation contained in her insurance application and that her admitted failure to read or examine the application carefully did not excuse or cause the misrepresentation to be innocent.

> An insured is under a duty to inform himself of the contents of the application he signs.

<u>Paul Revere Life Insurance Co.</u>, <u>supra</u> at 324.

> [I]n Connecticut, an applicant for insurance has the affirmative duty to `inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein.'

<u>Pinette</u>, 53 F.3d at 410 (internal citations omitted). Even where the insured provides the correct information, but the agent incorrectly writes it down, the insured is responsible for the misrepresentation contained in the application. <u>Id</u>. at 410-11.

> Material representations . . . relied upon by the company, which were untrue, and known by the insured to be untrue when made, . . . without further proof of actual conscious design to defraud . . . . If it were necessary to prove an intent to deceive, such intent would be inferred from the making of the false

11

representations with knowledge that they were false.

State Bank & Trust Co. v. Connecticut General Life Ins. Co., 109 Conn. 67, 72-73, 145 A. 565 (1929). Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 184 (2d Cir. 1984). See, Allstate Insurance Co. v. Priga, 810 F.Supp. 373, 376 (D.Conn. 1992).

Under Connecticut law, as applied by the Second Circuit, misrepresentations relating to prior losses are material as a matter of law, thereby allowing summary judgment.

> Common sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium. Connecticut courts have evaluated similar misrepresentations and found them material as a matter of Connecticut law.

Pinette, 52 F.3d at 411. See, Quinn v. Federal Kemper Life Insurance Co., __ F.Supp. ____, B90-CV-422 (D.Conn. April 28, 1995) (Goettel, J.) (attached hereto)(where the insurer's summary judgment motion was granted as a result of the insured's failure to disclose a prior heart condition in a life insurance application) (attached hereto). Federal Insurance Co. v. Bloodworth, 1987 CCH Fire and Casualty Cases 151, 153 (D. Conn. 1986) (Daly, J.) (concealment of prior theft claim was material to the issuance of the policy).

That the issue of residency and occupany was raised in the application makes it conclusively, or at a minimum presumptively, material. See, State Bank & Trust Co.,

12

supra, 109 Conn. 67, 71; Pinette, supra at 411.  Moreover residency is material by the objective standard under Connecticut law because "in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance." Pinette, supra at 411.  Whether a residence is occupied by an owner, rather than a tenant is a relevant inquiry for an insurer.  Obviously, an owner has more at stake in the maintenance and preservation of his home than a tenant.  Similarly, whether a residence is vacant, as opposed to occupied, is also relevant to the risks.

In Allstate Insurance Co. v. Priga, 810 F.Supp. 373 supra, the Court found that the residence of the insured was material and that the insured's "material misrepresentations to Allstate, both by signed statement and examination under oath, regarding his residency prior to the fire" were material and rendered the policy null and void.  See Fine, supra, (where the Second Circuit found that the insured's false statements relating to the maintenance of a sprinkler system and the temperature at which the buildings were kept were material).

C.    Summary Judgment Should be Granted as to all Counts

Each of the counts relies upon two premises: (1) that the insurance policy was valid and in effect thereby imposing duties and obligations upon Nationwide; and (2) that

13

Nationwide's denial of coverage was wrongful. In the event the court finds that Nationwide is entitled to summary judgment on the grounds of material misrepresentation contained in the application, then summary judgment should be granted as to all counts. The effect of material misrepresentation is to void the policy. See <u>Paul Revere Life Ins. Co. v. Pastena</u>, <u>supra</u> at 325. Once the policy is void, there is no basis for any of the counts in the complaint which are based upon duties and obligations flowing under the insurance policy. There can be no duties imposed upon Nationwide which Nationwide could have breached.

All of the plaintiffs' allegations, whether alleging tort or contract, attack Nationwide's denial of the insurance claim as wrongful conduct. If Nationwide is correct that the insurance policy is void, then its denial of the claim was proper. If Nationwide is entitled to summary judgment, this would conclusively establish that its conduct could not have been illegal under the various theories alleged.

"Where there is no duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." Wright & Fitzgerald, <u>Connecticut Law of Torts</u>, Third Ed. Section 2 at 3, citing <u>Zamstein v. Marvasti</u>, 240 Conn.

14

549 (1997); <u>RK Constructors, Inc. v. Fusco Corp.</u>, 231 Conn. 281 (1994); <u>Sheiman v. Lafayette Bank & Trust Co.</u>, 4 Conn. App. 39, 44 (1985).  "The existence of a duty is a question of law . . .." <u>Zamstein</u>, at 558.  Where a duty is based upon a contract, as alleged here, the duties run to the parties to the contract. <u>Sheiman v. Lafayette Bank</u>, at 43.

A claim of bad faith arises when the insurer breaches the implied covenant of good faith and fair dealing, which is implied in every insurance contract.  <u>Waugh v. Nationwide Mutual Insurance Co.</u>, 1995 WL 9481 (Conn. Super. 1995).  If there was no insurance contract, then there simply was no duty as matter of law.

D.     <u>Summary Judgment is Appropriate</u>

Summary judgment shall be granted,

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law.

F.R. Civ. P., 56(c).  Movant must make this showing. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  An issue is genuine "if evidence is such that a reasonable jury can return a verdict for the non-moving party." <u>Id</u>. at 248.  A factual issue is "material" if it "might affect the outcome of the suit under the governing law . . ." <u>Id</u>.

Summary judgment is proper in cases involving application misrepresentation. See,

15

<u>Paul Revere Life Insurance Co. v. Pastena</u>, supra (summary judgment granted); <u>Pinette v. Insurance Company of America</u>, supra (summary judgment granted); <u>Quinn v. Federal Kemper Life Insurance Co.</u>, supra (summary judgment granted).

> [S]ummary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proofs submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'

<u>Paul Revere Life Ins. Co.</u>, supra at 321.

> Although the moving party must show the non-existence of any material fact, an opposing party must substantiate its adverse claims by showing that there is a genuine issue of material fact along with the evidence disclosing the existence of such an issue. <u>Home Insurance Ins. Co. v. Aetna Life & Casualty Co.</u>, 235 Conn. 185, 202 (1995)

> '[C]onstruction of a contract of insurance proof presents a question of law for the court which this court reviews de novo.' <u>Aetna Life & Casualty Co. v. Bulaong</u>, 218 Conn. 51, 58 (1991)

<u>Paul Revere Life Ins. Co. v. Pastena</u>, supra at 322.

> A party opposing summary judgment must substantiate its adverse claim by showing there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . it is not enough, however, for the opposing party merely to assert the existence of such a disputed issue.

<u>Barrett v. Danbury Hospital</u>, 232 Conn. 242, 255 (1995).

16

A party opposing a motion for summary judgment "was entitled, indeed obligated to file an affidavit reciting evidentiary matter to establish the existence of a genuine issue as to a material fact." <u>Conference Center Ltd. v. TRC</u>, 189 Conn. 212, 217 (1983). "To oppose a motion for summary judgment, the non-movant must recite specific facts . . . which contradict those stated in the movants affidavit and documents." <u>Hammer v. Lumberman's Mutual Casualty Co.</u>, 214 Conn. 573, 579 (1990). <u>2830 Whitney Avenue v. Heritage Canal Development Associates</u>, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994) ("[t]he existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence"). <u>United Services Automobile Assn. v. Marburg</u>, 46 Conn. App. 99 (1997).

> Pursuant to Practice Book §§380 and 381, now Practice Book (1998 Rev.) §§17-45 and §§17-45 and 17-46, the party adverse to such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.
>
> . . . .
>
> While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'
>
> A defendant's motion for summary judgment 'is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact.' Because issues in this appeal concern questions of law, this court reviews such claims de novo.

17

<u>Norse Systems, Inc. v. Tingley Systems, Inc.</u>, 49 Conn. App. 582, 591-92 (1998) (internal citations omitted).

E.     <u>CONCLUSION</u>

For the foregoing reasons, the defendant respectfully requests that its Motion for Summary Judgment be granted.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY

_____
Michael Feldman, Esq.
Federal ID ct06649
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT 06032
(860) 677-0551
(860) 677-1147 (fax)

18

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed, via first class mail, postage prepaid, on this 28 day of September, 2005, to:

Timothy Brignole, Esq.
Juri Taalman, Esq.
Brignole & Bush
73 Wadsworth Street
Hartford, CT 06106

Mary C. Pokorski, Esq.
City of New Britain
Office of Corporation Counsel
27 West Main Street
New Britain, CT 06051

_____
Michael Feldman, Esq.

19