FILED

2006 JAN 17 A 11: 31

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| vs. | ) | |
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | ) | |
| Defendant | ) | JANUARY 16, 2006 |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendant, Nationwide Mutual Fire Insurance Company ("**Nationwide**"), respectfully submits this Memorandum in opposition to the plaintiff's October 28, 2005 Motion for Partial Summary Judgment on defendant's special defense of arson ("**Motion**"). Nationwide also submits the attached Affidavits of Charles A. Meyers (with attached exhibits) and Ronald Mullen, excerpts of the deposition of Timothy Stewart and Local Rule 56(a)2 Statement.

In support of his motion the plaintiff asserts: (1) not a "scintilla of evidence" exists that the fire was set by or at the plaintiff's direction; (2) that the subject fire "remains a fire of undetermined origin"; and (3) that no one has been arrested or charged by the New Britain Police Department. Each of the foregoing arguments are

without merit. Compelling evidence establishes significant financial motive of the plaintiff to obtain insurance proceeds of $285,000.00 to replace a building that had little value and that for years had been a "money pit". Expert testimony shows that the fire was incendiary. Serious questions exist as to the plaintiff's alibi at the time of the fire. Finally, evidence as to the absence of an arrest or conviction of the plaintiff is irrelevant and inadmissible and should not be considered in connection with the motion or at trial. Nationwide is filing a motion in limine with respect to such evidence.

On September 28, 2005 Nationwide filed a Motion for Summary Judgment in connection with its affirmative defense of misrepresentation.[1]

I. **BACKGROUND**

A. <u>The Fire</u>.

On July 8, 2001, a fire occurred at a building owned by the plaintiff located at 83 West Street, New Britain, Connecticut. The plaintiff made a claim with Nationwide under a property insurance policy. Nationwide, after a comprehensive investigation

---

[1] If the Court grants Nationwide's motion, the case would be terminated, and plaintiff's Summary Judgment Motion would be rendered moot.

2

denied the claim on the grounds that the plaintiff was responsible for intentionally causing the fire and misrepresenting material facts relating to the insurance.

At the time of the fire, the building was vacant, unoccupied and gutted, having been in a state of renovation for a substantial period of time. A pre-fire appraisal established the market value of the property, in a gutted condition, to be $20,000.00. The plaintiff made an initial claim to Nationwide for $285,000.00. Plaintiff's financial motive for this fire is apparent.

The incendiary nature of this fire is also well established. The building had no utilities--so the fire could not have been caused by an electrical or natural gas mishap. Nor was the structure inhabited, so that accidental human causes such as cooking or smoking are ruled out.

The fire evolved rapidly and grew into an enormous inferno, creating sufficient heat to ignite or cause damage to neighboring buildings and nearby cars. Yet most of the building was devoid of furniture, rugs, personal property and other items which would provide the type of fuel load necessary to create such an inferno. Rather, substantial quantities of accelerant must have been liberally and intentionally spread throughout the building causing the development of the fire.

3

B.    The Fire Was Incendiary.

Immediately after the fire, Nationwide engaged the services of Engineering & Fire Investigations to conduct an inspection to determine the cause and origin of the fire. Ronald R. Mullen, an expert in the field of fire cause and origin, performed the investigation and prepared a report dated October 17, 2001 and a supplemental report dated October 25, 2001. He concluded that the fire was incendiary based upon the following: (1) there were no electrical, natural gas or propane services into the structure; (2) the fire was well involved as reported by the first arriving police who described the fire as consuming the structure from basement to roof; (3) the structure was void of significant personal contents or furnishings; (4) the limited quantities of contents and furnishings that were in the structure would not cause such intense fire spread; (5) the intense fire and heat buildup occurred over a very short period of time thereby requiring accelerant; (6) the fire not only destroyed the subject structure but caused destruction by fire to two adjacent buildings, as well as fire and heat damage to several other buildings and vehicles; (7) the possibility of an errant firework causing the fire loss was considered and rejected on the grounds that it would be extremely unlikely for the firework to remain burning long enough to ignite material and would

4

not, without the assistance of an accelerant have caused fast moving and intense fire substantial spread; (8) the possibility of the fire being caused by a squatter (by, for example, unattended fire, candle or cigarette) was ruled out, as they would not, without the assistance of an accelerant, cause the substantial, fast moving and intense fire; and (9) that five to ten gallons of flammable or combustible liquid would have had to be spread through the interior of the structure to have caused the extensive and fast moving fire.  (Affidavit of Ronald Mullen, January 12, 2006, ¶¶ 5 - - 7 and Exhibits A and B attached thereto).

The fire inspector for the New Britain Fire Marshal's office, Timothy Stewart (now mayor), testified at his deposition, among other things, that in his opinion, it is probable that the fire was intentionally set.  Deposition of Timothy Stewart dated April 15 and 19, 2005 (excerpts attached hereto as Tab A and Tab B at 52-53).  He ruled out carelessly discarded smoking materials, cooking, weather and other accidental causes of the fire.  Tab B at 61-65.

C. Financial Motive

The plaintiff purchased the subject property for $11,000.00 in 1997.  Exh. E at

5

6, Exh. F at 31.[2] The building was not habitable at any time while the plaintiff owned it. Neither the plaintiff, nor anyone else lived in the building while the plaintiff owned it. Nor did the plaintiff receive any rent or other economic benefit -- ever -- from his ownership of this property. Affidavit of Charles Meyers ("Meyers Aff.") dated January 12, 2006, Exh. E at 8-10.

The property was a financial "black hole" for the plaintiff. He had spent $100,000.00 on renovations before the fire (Exh. D at 17-19) and estimated another $70,000.00 in future expenses to make it habitable. Exh. D at 21. Even after the renovations would be complete the property would only have a value of $117,000.00. Exh. B at 4.

The property was uninsured from the time plaintiff purchased it in 1997 until January 2001 when the plaintiff obtained the subject insurance policy from Nationwide. Exh. D at 12.

An appraisal of the property shows the value of the property in its existing (pre-fire) condition to be $20,000.00, Exh. B; another appraisal shows the value of the

---

[2] Exhibits reference herein are to the Affidavit of Charles Meyers dated January 12, 2006.

6

improvements (pre-fire) to be $35,000.00. Exh. C.

On the other hand, a fire insurance claim for $285,673.00, Exh. A, would allow the plaintiff to capitalize on a fire loss by converting a money pit into a huge cash windfall.

The substantial economic motive of the plaintiff is obvious. He held this property for several years without obtaining any benefit whatsoever. He spent a substantial amount in improvements. Yet, he had to spend much more to make the property habitable. Rehabilitating the property would be a huge waste of money (for an additional $70,000.00) - - for a property which would never have substantial value. The plaintiff had much to gain in seeing that the fire was set.

Plaintiff's Proofs of Loss established both his motive in having the fire set, as well as his willingness to defraud Nationwide. He included in his original Proof items that did not exist and were therefore not damaged. Only after Nationwide pointed out the inflated Proof did plaintiff correct these "errors." This is the basis for Nationwide's September 28, 2005 Summary Judgment Motion.

D.   <u>Plaintiff's Flawed Alibi</u>

The plaintiff claims that he had an argument with his wife (over a subject he

7

refused to discuss), marched out of the house, and drove several hours to Greenpoint on the far western section of Brooklyn, New York where he stayed late into the night with individuals he did not know very well. Exh. D 71-76, 86. At the time, he had a baby at home with his wife. He claims that he left Greenpoint between 1:00 a.m. and 2:00 a.m. to head back to Connecticut and pulled over at a McDonald's rest area on Interstate 95 to sleep. Exh. D at 80-82.

The cell phone records show that the plaintiff - - or whoever was in possession of his cell phone at the time - - was not in New Britain during certain hours of the night of the fire. Yet they show plaintiff to be somewhere other than where he claimed to be at the time.

Plaintiff's alibi is both contrived and false. He left his family and headed to Brooklyn in an effort to put himself as far from the New Britain fire location as possible.

Records relating to the plaintiff's cell phone activity shows that the plaintiff was not in Greenpoint, Brooklyn when he said he was. Rather the cell phone records show that his cell phone received several phone calls off towers located in central Long Island, some forty to fifty miles from Greenpoint. These records were reviewed

8

by James S. Sylvester, a wireless engineer (who has been disclosed by Nationwide as an expert). Mr. Sylvester concluded that the subject cell phone was not in Greenpoint at the time when plaintiff claims he was in Greenpoint. Exh. G.

## II.   DISCUSSION

### A.   The Evidence is More Than Sufficient to Create an Issue of Fact as to the Plaintiff's Responsibility for this Fire.

The Second Circuit, among many courts, have long held that circumstantial evidence is sufficient in civil arson cases.

"Direct proof of arson is seldom available, so courts have long recognized that it can be established in civil cases by circumstantial evidence." Elgi Holding, Inc. v. Insurance Company of North America, 511 F.2nd 957, 959 (2nd Cir. 1975).

In Elgi Holding evidence of the insured's financial motive together with expert testimony that the fire was incendiary was sufficient to sustain the jury's verdict. No evidence was presented that the insured set the fire; the insured denied any involvement in the fire. The Second Circuit held that the evidence "which established that the fire was incendiary in nature and that [the insured] has a motive to cause it, is such that we cannot say that reasonable men could not conclude Hall caused the fire. Consequently, the jury's verdict should stand." Id. at 959.

9

Nationwide has presented compelling evidence to establish motive and the incendiary cause of the fire, in compliance with the criteria set by the Second Circuit. This evidence - - at a minium - - creates a genuine issue of fact.

In <u>Travelers Insurance Company v. Namerow</u>, 261 Conn. 784 (2002), the Connecticut Supreme Court favorably cited a series of cases which recognized that civil arson can be proven by circumstantial evidence. <u>Verrastro v. Middlesex Insurance Co.</u>, 207 Conn. 179, 183 (1988) (any or all of the elements of arson may be proven by circumstantial evidence).  The Court in <u>Travelers</u> rejected the idea that motive must be proven as a distinct element of a civil arson defense.

In <u>Travelers</u>, <u>supra</u>, the Connecticut Supreme Court affirmed the jury verdict in favor of the insurance company which had denied the insured's fire loss claim on the grounds of arson.  There, as here, the insureds denied any involvement in the fire, contested the cause of the fire and the record did not indicate that the insureds were arrested or convicted.  The trial judge denied the insured's motion for directed verdict "concluding that there was sufficient evidence from which the jury could infer that the defendants had motive to set the fire and damage their house and that evidence and motive was not required . . . ." <u>Id.</u> at 792.  There was no direct or eye witness

10

testimony linking the insureds to the fire.

In <u>Arms v. State Farm & Casualty Co.</u>, 731 F 2nd 1245 (6th Cir. 1984), the appellate court reversed the trial court's granting of a directed verdict against the insurer on its defense of arson. The Court held that there was sufficient evidence of motive and that the fire was incendiary, even though undisputed evidence showed the insureds to be fifty miles away from the fire. The Court held: "arson cases typically are difficult to prove. It has been stated that it is rarely 'possible to prove the actual lighting of the match'" <u>Id.</u> at 1249. <u>Cora Pub, Inc. v. Continental Casualty Co.</u>, 619 F. 2nd 482 (5th Cir. 1980); (reversing district court's directed verdict against insurer on its arson defense; finding that there was sufficient circumstantial evidence for a jury to infer insured's involvement in incendiary fire); <u>Sullivan v. American Motorist Insurance Co.</u>, 605 F. 2nd 169 (5th Cir. 1979); <u>Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Insurance Co.</u>, 536 F. 2nd 1187 (7th Cir. 1976) (reversing directed verdict against the insurer on the arson defense. <u>Id.</u>); <u>Jamaica Time Petroleum, Inc. v. Federal Insurance Company</u>, 366 F 2nd 156 (10th 1966) (affirming jury finding that the insured was responsible for deliberately destroying airplane); <u>Demyan's Hofbrau, Inc. v. INA Underwriter's Insurance Co.</u>, 542 F. Supp. 1385

FELDMAN & HICKEY, LLC • ATTORNEYS AT LAW • 10 WATERSIDE DRIVE, SUITE 303
FARMINGTON, CONNECTICUT 06032-3084 • (860) 677-0551 • FAX (860) 677-1147

(S.D.N.Y. 1982).

See, Shawanga Holding Corp. v. New York Property Insurance Underwriting Association, 394 N.Y.S. 2nd 69 (N.Y. App. 1977). (affirming trial court's finding of arson based upon incendiary cause and circumstantial evidence of motive; that evidence was sufficient to present the defense to the jury; "since direct proof of arson is seldom available, the courts have long recognized that it can be established in civil cases by circumstantial evidence". Id. at 70); Stone v. Continental Insurance Co., 650 N.Y.S. 2nd 772 (N.Y App. 1996) ("evidence of motive and incendiary origin is sufficient to defeat an insured's motion for summary judgment in an action on its fire insurance policy"; Appellate Court found trial court's summary judgment in favor of insured to be erroneous and reversed); Moore v. Farmers Insurance Exchange, 444 N.E. 2nd 220 (Ill. App. 1982); Johnson v. Auto-Owners Insurance Group, 509 N.W. 2nd 538 (Mich. App. 1993); Freeman v. St. Paul Fire & Marine Insurance Co., 324 S.E. 2nd 307 (N.C. App. 1985); Giambra v. Aetna Casualty & Surety Co., 461 A. 2nd 1256 (P.A. Super. 1983).

"Motive and opportunity are merely two factors to be considered in such a determination." Johnson v. Auto-Owners Insurance Group, 509 N.W. 2nd 538

FELDMAN & HICKEY, LLC • ATTORNEYS AT LAW • 10 WATERSIDE DRIVE, SUITE 303
FARMINGTON, CONNECTICUT 06032-3084 • (860) 677-0551 • FAX (860) 677-1147

(Mich.1993). See, Freeman v. St. Paul Fire & Marine Ins. Co., 324 S.E. 2nd 307 (N.C. 1985) (ordinarily there is no direct evidence of cause of fire; motive and opportunity are merely circumstances to be considered, but are not essential elements of arson defense) cited favorably in Travelers Insurance Co. v. Namerow, 261 Conn. 784, 803-04 (2002).

Opportunity, like motive, is not a separate element of the arson defense, Johnson, Freeman and Travelers, supra and may be proven by circumstantial evidence. Verrastro, supra, at 183. In any event opportunity existed, whether the plaintiff was in Greenpoint or the middle of Long Island or New Britain; as he had employees, friends, contractors or persons unknown to perform the task for him. Plaintiff has presented no evidence corroborating his whereabouts on the night of the fire. The plaintiff has a substantial contracting business and he had numerous associates, employees and contractors, some of who had access to the building (he allowed others to have keys and employees and contractors had access to the building the day of the fire, Exh. E at 73; he often pays cash to employees. Exh. D 57-58).

    B.    Plaintiff's Arguments Relating to Burden of Proof are Misplaced

13

Plaintiff argues that "defendant has failed to meet its burden on the civil arson defense . . .." Plaintiff's Mem. at 9. Actually defendant has not attempted to "meet its burden of proof" since the trial has not yet begun. While Nationwide may have the burden of proof at trial on its arson defense, with respect to plaintiff's summary judgment motion the burden is on the movant to establish the absence of any genuine issue of material fact. The evidence and inferences are to be viewed in a light most favorable to the non-moving party; moving party is held to a stringent standard. Wright & Miller 10A Fed. Practice & Procedure §2727 at 455-62.

Notwithstanding the foregoing, the plaintiff makes some confused statements with respect to the insurer's burden at trial. Under Connecticut law, the insurer's burden of proof with respect to policy defenses and conditions, such as intentional acts (such as arson) and material misrepresentations, is by a preponderance of the evidence.

In Verrastro v. Middlesex Insurance Co., 207 Conn. 179, 181-83 (1988), the Connecticut Supreme Court held that the burden of proof for an insurer for proving a defense of civil arson is a preponderance of the evidence; and that the insurer does not need to prove the defense by "clear and convincing evidence." The same is true

14

for an insurer's defense of misrepresentation. <u>Rego v. Connecticut Insurance Placement Facility</u>, 219 Conn. 339, 340 (1991).

Plaintiff also cites <u>Souper Spud, Inc. v. Aetna Casualty & Surety Co.</u>, 5 Conn. App. 579, 581 (1985) <u>cert. denied</u> 198 Conn. 803 (1986) setting forth the elements to establish arson as a defense for insurance coverage. <u>Souper Spud</u>, however, was abrogated in <u>Travelers Insurance Co. v. Namerow</u>, 261 Conn. 784, where the Connecticut Supreme Court indicated that motive is not an element of a civil arson defense: "rather, its role is best served by bolstering cases in which direct evidence of arson is lacking." <u>Id.</u> at 801-803. Plaintiff also cites <u>Aetna Casualty & Surety Co. v. Pizza Connection, Inc.</u>, 1997 WL 403157 (1997) for the proposition that the insurer's evidence was insufficient to sustain its burden of proof. However <u>Aetna</u> was decided after trial in which the Court had an opportunity to weigh the evidence and assess the credibility of the parties. In spite of circumstantial evidence presented by the insurer, the Court believed the insured's testimony that he had nothing to do with the fire.

C. <u>Evidence of the Absence of an Arrest or Conviction is Inadmissible</u>

Evidence of the absence of an arrest or conviction of the plaintiff is inadmissible and should not be considered at trial or with respect to the summary

15

judgment motion. <u>American Home Assurance Co. v. Sunshine Supermarket</u>, 753 F. 2nd 321 (3rd Cir. 1985); <u>Southern New England Television Co., Inc. v. Hartford Fire Ins. Co.</u>, 1994 WL 324412 (Conn. Super). Summary judgment motions must be supported by evidence that is admissible. Fed. R. Civ. Pro. Rule 56(c). Nationwide relies upon its Memorandum in Support of Motion In Limine for further discussion of this issue.

### III   CONCLUSION

For the foregoing reasons, Nationwide respectfully requests that the plaintiff's Motion for Summary Judgment be denied.

> DEFENDANT, NATIONWIDE MUTUAL
> FIRE INSURANCE COMPANY
>
> By _____
> Michael Feldman, Esq.
> Feldman & Hickey, LLC
> 10 Waterside Drive, Ste. 303
> Farmington, CT 06032
> Its Attorney
> Fed. Bar #ct 06649
> (860) 677-0551

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was sent mailed via first class mail, postage prepaid on January 16, 2006 to the following:

Juri E. Taalman, Esq.
Timothy Brignole, Esq.
Brignole & Bush
73 Wadsworth Street
Hartford, CT 06106

Mary C. Pokorski, Esq.
Office of Corporation Counsel
City of New Britain
24 West Main Street
New Britain, CT 06051

_____
Michael Feldman

17