FILED

2006 JAN 17 A 11: 32

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| vs. | ) | |
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | ) | |
| Defendant | ) | JANUARY 12, 2006 |

### AFFIDAVIT OF CHARLES MEYERS

Charles Meyers being duly sworn deposes and says:

(1) I am over the age of eighteen and believe in the obligations of an oath. This affidavit is made upon my personal knowledge.

(2) During 2001 I was a claims representative for the defendant Nationwide Mutual Fire Insurance Company ("Nationwide"), and was the claims representative primarily responsible for responding to the claim of Tomasz Mierzejewski relating to a fire loss that occurred at 83 West Street, New Britain, Connecticut on July 8, 2001.

(3) Nationwide conducted an extensive investigation into this claim. The investigation included: (a) retaining Ronald Mullen, a fire investigator with the firm of Engineering & Fire Investigations to conduct an investigation into the cause and origin

of the fire; (b) directing Jason Mumbach, of the Nationwide Special Investigations Unit, who is also a fire investigator, to investigate the cause of the loss and interview potential witnesses; (c) engaging outside counsel Feldman & Hickey, to conduct an extensive examination under oath of the insured, review documents and provide legal analysis; (d) reviewing extensive financial records of the insured; and (e) reviewing information relating to the subject property, including real estate appraisals.

(4)   Nationwide determined that the fire was incendiary based upon the opinions of Ronald Mullen, who prepared two reports (see Affidavit of Ronald Mullen) and Jason Mumbach. Both of these fire investigators concluded that the fire was incendiary. We also understood from newspaper articles shortly after the fire, that Timothy Stewart, a fire investigator employed by the City of New Britain fire marshal's office, believed that the fire may have been incendiary. Mr. Stewart later testified at his deposition that, even though he classified the cause as undetermined, that the cause was incendiary with a reasonable degree of probability based upon his experience. See, excerpts of deposition of Timothy Stewart.

(5)   The insured submitted a sworn signed proof of loss attached hereto as Exhibit A in which he claimed $285,673.00 from Nationwide for this loss. We learned

of a real estate appraisal conducted for a mortgage lender, which indicated that the value of the property as of February 6, 2001, was $20,000.00. Excerpts of appraisal by Donato Maisano of Real Estate Lending Service are attached as Exhibit B. The foregoing appraisal indicated that after renovation work was completed the property value would be only $117,000.00. We also arranged for a separate appraisal to be conducted by John LoMonte of John LoMonte Real Estate Appraisers & Consultant. Mr. LoMonte indicated that as of July 6, 2001 (two days before the fire), the value of the improvements was only $35,000.00. Excerpts of the LoMonte appraisal report are attached as Exhibit C.

(6)     We also learned that the insured purchased the subject property for $11,000.00 in 1997. Exh. E at 6; Exh.F at 31 (excerpts of the Examination Under Oath ("EUO") of the insured dated 10/12/01, 11/1/01 and 11/14/01 are attached hereto as Exhs. D, E and F). The building was uninhabitable for the entire time it was owned by the insured, and the building was never occupied by the insured or any tenants. Prior to the time of the fire, the insured held this property for three years without receiving any rent or other financial benefit. Exh. E at 8, 9-10. Rather he incurred substantial sums in trying to renovate the property. The insured indicated at

3

his examination under oath that he had spent over $100,000.00 on the property as of the time of the fire, Exh. D at 17-19, and expected to spend another $70,000.00 in renovations before it could be habitable. Exh. D at. 21. The building was uninsured until 2001. Exh. D at 12.

(7)     In light of the small amount the insured paid for the property ($11,000.00), the appraised value ($20,000.00 - $35,000.00) and the large amount to be gained if Nationwide paid the amount insured claimed in his sworn proof of loss ($ 285,673.00), Nationwide concluded that the insured had a very substantial financial motive. We are unaware of anyone else who had any motive or financial interest in connection with the fire.

(8)     The insured's alibi on the night of the fire was that he was at a restaurant in Greenpoint, which is a section of Brooklyn, New York. We submitted the insured's cell phone records for analysis to a cell phone expert, James Sylvester of Riser Management. Mr. Sylvester determined that the cell phone records showed that the insured's cell phone was in the middle of Long Island, rather than in Greenpoint on the night in question thereby raising serious doubts about the insured's alibi. The report of James Sylvester is attached hereto as Exh. G.

4

(9) As a result of this investigation, Nationwide believed that the fire was incendiary, that the insured had a substantial financial motive in causing the fire to be set, and that the insured's alibi was doubtful. These are some of the key reasons that resulted in Nationwide believing that the insured was responsible for setting or causing the fire to be set.

(10) The insured submitted a sworn proof of loss which was excessive and in which he misrepresented the scope and amount of the loss. In his sworn proof of loss he was claiming $285,673.00 (Exh. A) including recovery for items that did not exist, totaling $105,990.00 (as more fully set forth Nationwide's Summary Judgment Motion dated September 28, 2005 (Memorandum at p. 6). See Affidavit of Charles Meyers dated September 28, 2005, submitted in support of Nationwide's Summary Judgment Motion with attached exhibits 1 through 5 (showing that insured, after being confronted with the original inflated proof of loss, submitted a new one, deleting $105,990.00).

(11) The insurance policy issued to the insured contains the following exclusion:

> Intentional or criminal acts, meaning a loss resulting from an act committed by or at the direction of an insured that may reasonably be

5

expected to result from such acts; or is the intended result from such acts. This exclusion applies only to the insured who committed or directed the act causing a loss.

_____
Charles Meyers

Subscribed and sworn to me this ___12___ day of January, 2006.

_____
Notary Public/ 2/28/09
Commissioner of the Superior Court

6