Westlaw.

Not Reported in A.2d                                                                                                              Page 1

Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494
**(Cite as: Not Reported in A.2d)**

c

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
James OFSTEIN,
v.
NATIONWIDE MUTUAL INSURANCE CO.
No. CV 960478229S.

May 5, 1999.

MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

AURIGEMMA.

*1 The defendant, Nationwide Mutual Insurance Company ("Nationwide"), has moved for summary judgment as to the plaintiff's complaint dated October 11, 1996 on the grounds that the policy of insurance between the plaintiff and defendant is void as a result of various misrepresentations made by the plaintiff concerning the theft claim for which the plaintiff seeks to recover in this action.

Procedural History and Facts

In this action the plaintiff seeks payment for a claim made under an insurance policy issued by the defendant as a result of property allegedly stolen from the plaintiff's 36 foot sailboat. In its Amended Answer dated May 6, 1998 Nationwide has filed a Special Defense in which it asserts that the policy of insurance between the plaintiff and the defendant is void as a result of the plaintiffs knowingly misrepresenting what had been stolen in his sworn Proof of Loss and misrepresenting to the police and the defendant the circumstances surrounding the removal of a Raytheon CRT radar screen from the plaintiff's boat and the circumstances surrounding its inclusion in the theft claim.

The following facts are not contested. In his initial statement to the Old Saybrook Police Department, dated February 15, 1996, the plaintiff stated:
Numerous items were missing from the vessel, all of which were expensive. This is the best description (sic) I can give of the items until I bring in receipts and invoices.

1. 155% Genoa Roller Furling Sail, color white est. cost $6,000.

2. Mast Head "Main" Sail with batons and reefs color white est. cost $3000

6. Radar monitor est. cost $1500.00

In the Proof of Loss, which was made under oath, submitted to Nationwide and dated March 11, 1996, the plaintiff claimed a total loss in the amount of $22,956.42. According to the plaintiff's deposition testimony, that amount included the radar monitor. Both the Proof of Loss and the Statement to the Old Saybrook Police contained the misrepresentation that the radar monitor was stolen. In fact, the monitor had not been stolen, but had been taken off the boat at the time the theft was discovered for the purposes of increasing the amount of the plaintiff's insurance claim.

The plaintiff's second statement made to the Old Saybrook Police is dated May 15, 1996. It indicates that when he discovered the theft the plaintiff and a person named Ted Novakowski, who had been working on the boat, discussed the issue of insurance and decided to remove the radar monitor from the boat to "help compensate for the deductible." According to this statement, several days after the theft, the plaintiff disposed of the monitor in the trash because he was scared. Unlike the February statement, this statement reflects that the plaintiff was warned of his *Miranda* [FN1] rights.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 2
Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494
**(Cite as: Not Reported in A.2d)**

FN1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After admitting to the police in May of 1996 that he attempted to defraud Nationwide by intentionally removing the radar monitor from the boat, reporting it as stolen, and then throwing it away, the plaintiff told a different story to the defendant's adjuster in a recorded statement on June 6, 1996. The plaintiff told the defendant's adjuster, Donald Thompson, that he had mistakenly thought the radar monitor was on the boat at the time of the theft when he had reported it to the police as having been stolen. The plaintiff further told the adjuster that when he remembered that he had removed the monitor from the boat before the theft, he asked the police to remove the radar monitor from the list of stolen items in the police report. Accordingly to the plaintiff's later deposition testimony this version was untrue and the May 1996 statement to the police was true.

*2 The insurance policy at issue provides:

*Section I and Section II-General Policy Conditions*

2. *Concealment or Fraud*

(a) This policy is void as to all insureds if you or any other insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

(b) We do not provide coverage for an insured who, either before or after a loss, has:

(1) intentionally concealed or misrepresented any material fact or circumstance; or

(2) has committed any fraud or made false statements; relating to this insurance.

Discussion of Law and Ruling

Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Connecticut Bank & Trust Co. v. Carriage Lane Associates,* 219 Conn. 772, 780-81, 595 A.2d 334 (1991); *Lees v. Middlesex Ins. Co.,* 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co. v. Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book § § 380, 381; *Burns v. Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Town Bank & Trust Co. v. Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978); *Strada v. Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. *Batick v. Seymour,* 186 Conn. 632, 647, 443 A.2d 471 (1982); *New Milford Savings Bank v. Roina,* 38 Conn.App. 240, 243-44, 659 A.2d 1226 (1995).

Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. *Scinto v. Stam,* 224 Conn. 524, 530, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993); *Connell v. Colwell,* 214 Conn. 242, 246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." *Wilson v. City of New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989).

*3 An insurer who claims the special defense of concealment or misrepresentation as to a claim " must prove only that the insured wilfully concealed or misrepresented a material fact with the intention of deceiving the insurer." *Rego v. Connecticut Insurance Placement Facility,* 219 Conn. 229, 346, 593 A.2d 491 (1991); *Chauser v. Niagara Fire Ins. Co.,* 123 Conn. 413, 196 A. 137 (1937).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 3

Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494
**(Cite as: Not Reported in A.2d)**

The concealment or fraud provision clearly provides that the penalty for making material false statements is a voiding of the entire policy. While the result may seem harsh, the rationale for such a penalty is to "ensure that the parties will deal fairly and honestly with each other." *Morgan v. Badger Mut. Ins. Co.,* 181 F.Supp. 496, 499 (D.C.Fla.1960). The basis for this rationale was articulated more than one hundred years ago:

The insured is presumed to know better than anyone else the value of his property and the amount of his loss, and is bound to make his statement of loss honestly, without any attempt to obtain more than his actual damages; and this rule of law [that] thus defeats all claims, unless honestly made, is intended to protect insurance companies from frauds which might otherwise be perpetrated on them. It is a rule which can do an honest man no harm.

*Huchberger v. Home Fire Ins. Co.,* 12 F.Cas. 793 (CC.Ill.1870).

This rationale has been reaffirmed in more recent cases. In *Longobardi v. Chubb Ins. Co. of New Jersey,* 582 A.2d 1257, 1261, 121 N.J. 530 (1990), the New Jersey Supreme Court held that:
misrepresentations [made during the insurer's post-loss investigations] strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims.

In *American Diver's Supply & Manufacturing Corp. v. Boltz,* 482 F.2d 795, 798 (10th Cir.1973), the United States Court of Appeals for the Tenth Circuit held that:

While discovered misrepresentations do not normally result in penalties to the unsuccessful defrauder-other than losing the unjustified benefits of whatever action he sought to induce-that situation is unlike the case where the attempted defrauder is also expecting the insurance company to comply with the reimbursement provisions of a contract which they have entered into. The penalty for attempted fraud in an insurance case where a fraud clause exists, on the other hand, is not simply forfeiture of the excess of inflated recovery amount but the voiding of all actual loss benefits as well. But we cannot accept that his is too harsh a consequence in view of the insured's being put on notice and the alternative of encouraging "an everything-to-win, nothing-to-lose proposition" for the insured.

Although the penalty under the fraud or concealment clause may seem harsh, it does not apply to innocent misrepresentations by an insured. *Middlesex Mutual Assurance Co. v. Walsh,* 218 Conn. 681, 692, 590 A.2d 957 (1991). In this case the plaintiff makes no claim that the misrepresentations were innocent.

*4 False statements by an insured are material "if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Insurance Co.,* 725 F.2d 179, 183 (2d Cir.1984). False statements which might have affected the attitude or action of the insurer or which would discourage, mislead or deflect the insurer's investigation are also material. *Id.* at 184. "An insured's misstatement is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." *Longobardi v. Chubb Ins. Co. of New Jersey,* 582 A.2d 1257, 1263, 121 N.J. 530 (1990).

In *Allstate Ins. Co. v. Priga,* 810 F.Supp. 373 (D.Conn.1992) (applying Connecticut law), *affirmed,* 1 F.3d 133 (2d Cir.1993), Allstate Insurance Company sought a judgment declaring that a homeowner's insurance policy was void under the fraud and concealment clause after the homeowner made misrepresentations on his proof of loss. The misrepresentations concerned the contents of the insured house at the time it was destroyed by fire. In *Priga* the homeowner claimed that various items, including electronics equipment, a video-cassette recorder, and seventeen leather jackets, were destroyed by the fire. He later admitted that those items had never been in his house. The court held that:
the statements in the Proof of Loss constitute a material misrepresentation in that they were "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                     Page 4
Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494
**(Cite as: Not Reported in A.2d)**

calculated either to discourage, mislead or deflect [the insurer]'s investigation." ... Under the terms of the policy, such misrepresentation to [the insurer] during the investigation of [the insured's] claim renders the policy null and void.

*Id.* at 378 (citing *Fine v. Bellefonte Underwriters Insurance Co.,* 725 F.2d 179 (2d Cir.1984)).

Courts in other jurisdictions have held that when an insured knowingly or intentionally includes items in a statement of loss which were not truly lost or destroyed, the misrepresentation is material and bars the insured's entire claim as a matter of law. See, e.g., *Mutual of Enumclaw Insurance Co. v. Cox,* 757 P.2d 499, 110 Wash.2d 643 (1988); *American Diver's Supply & Manufacturing Corp. v. Boltz,* 482 F.2d 795 (10th Cir.1973); *Saks v. Continental Insurance Company,* 23 N.Y.2d 161, 295 N.Y.S.2d 668, 242 N.E.2d 833, 835 (1986); *Home Insurance Company v. Hardin,* 528 S.W.2d 723 (Ky.1975); *Dollof v. Phoenix Insurance Co.,* 19 A. 396, 82 Me. 267 (1890).

In his one-page Memorandum in Opposition to Summary Judgment the plaintiff does not claim that there are any disputed issues of material fact. Similarly, at the oral argument of this motion the plaintiff did not argue that there were any issues of material fact. Instead, he proffered one legal argument: the fraud and concealment clause did not void the insurance policy because Nationwide continued to accept premiums after the boat theft claim and did not cancel the policy.

*5 The court in *Candido v. Worcester Insurance Co.,* No. CV93 0343978 (July 22, 1997) (Hodgson, J.) 1997 Ct. Sup. 7459, considered a virtually identical argument:

The policy provision which the special defense invokes is as follows:
2. Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an insured has intentionally a) concealed or misrepresented any material fact or circumstance; b) engaged in fraudulent conduct; or c) made false statements; relating to this insurance.

The Court in *Rego* construed the phrase "relating, to the insurance" with regard to the claim at issue in that case as including misrepresentations concerning a claim of loss.

The plaintiff claims that the defendant cannot invoke this exclusion because it did not cancel the policy. It is not reasonable to construe the cited policy term as requiring an insurer to cancel a policy in order to treat the obligation to pay a particular claim as void. Contracts of insurance are to be construed in the same manner as other contracts, such that they are given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning. *Aetna Casualty & Surety Co. v. CNA Ins. Co.,* 221 Conn. 729, 786 (1992). The provision that the "policy" is "void" in case of misrepresentation is reasonably read as meaning that the insurer does not have to fulfill its stated duties as to a claim containing material misrepresentations. "Void" is not defined in the contract of insurance at issue. The adjective is defined in Black's Law Dictionary as follows: "Constituting a nullity. Binding on neither party and not subject to ratification ... Sometimes construed as 'voidable' ..."

According to Couch on Insurance 2d, at § 38:129, "[w]here the insured completes a sworn proof of loss and inflates the amount of his loss, he is attempting to defraud the insurer and as such may be denied any recovery with the policy."

The plaintiff has argued to the effect that if the provision at issue is ambiguous as to whether "void" means "subject to cancellation" or "not requiring compliance," the ambiguity should be read in favor of the insured. *It is difficult to see how a construction depriving the insured of the remaining term of coverage, not just of coverage for the particular claim, favors the insured, especially since the evidence established that the defendant later paid a large claim for property damage under the policy.* The Supreme Court has noted that the possibility of differing constructions does not mean that the court should distort provisions to accord a meaning other than that evidently intended by the words. *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania,* 231 Conn. 756, 770-71, 653 A.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 5
Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494
**(Cite as: Not Reported in A.2d)**

122 (1995); *Weingarten v. Allstate Insurance Co.,* 169 Conn. 502, 363 A.2d 1055 (1975). The words of the exclusion relied on plainly signal that the insurer's obligations do not apply to fraudulent claims or claims including misrepresentations. This court does not find that the defendant waived that provision by not canceling the policy immediately, but that it properly treated the policy as void as to the particular claim in which it determined that misrepresentations had been made concerning the extent of the loss.

*6 1997 Conn.Sup. 7467-68. Emphasis added.

On the record before this court Nationwide has established that the plaintiff intentionally made several material misrepresentations to the defendant concerning his claim of theft from his boat. The plaintiff has not submitted any evidence to the contrary, has not claimed that he disputes the facts, but has only argued that under the facts presented by the defendant, Nationwide cannot void the policy with respect to the boat theft claim. This court agrees with the court in *Candido.* Nationwide properly treated the policy as void as to the boat theft claim in which it determined that misrepresentations had been made concerning the extent of the loss.

Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." *Wilson v. City of New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989). Where there are no disputed facts, but only a dispute as to an issue of law, as in the present case, there is no real issue to be tried. For the foregoing reasons, the Motion for Summary Judgment is granted.

Conn.Super.,1999.
Ofstein v. Nationwide Mut. Ins. Co.
Not Reported in A.2d, 1999 WL 329642 (Conn.Super.), 24 Conn. L. Rptr. 494

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.