UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| | ) | |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | JANUARY 16, 2006 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.      **FACTUAL BACKGROUND**

On July 7-8, 2001, a fire occurred on property owned by the Plaintiff at 83 West Street, New

Britain, Connecticut ("Property"). The fire completely consumed the building and contents.

The fire was, and remains, of undetermined origin and the case is still under investigation by the New

Britain Police Department. After more than four and a half years, no one has been arrested or charged

with starting the fire or being involved with the fire. The Property in question was a three-family

residential structure which was being renovated by the Plaintiff, a general contractor, who planned to

live there with his family and to rent out the remainder of the building. At the time of the fire, the

building was unoccupied and the Plaintiff resided with his family, consisting of his wife and two

children, at 100 Broad Street, Apt W4 in New, Britain, Connecticut. Plaintiff, had moved to the United

States from Poland, and at the time of the fire had only a very limited knowledge of English.  Prior to the fire, the Plaintiff had a policy of fire insurance with the Defendant Nationwide Mutual Fire Insurance Company ("Nationwide").  Shortly before the fire, the underwriters for Nationwide had indicated to the insured through a Nationwide agent that the premises then under renovation by the Plaintiff were underinsured and that additional insurance was required, together with an additional premium.  Plaintiff paid the additional premium on said increased insurance and the Nationwide policy was in full force and effect on the day of the fire.

After the fire the Plaintiff made a claim under the policy and submitted a Proof of Loss.  Nationwide required the Plaintiff to undergo three days of examination under oath, but still did not pay the claim.   Plaintiff submitted an amended Proof of Loss to Nationwide on or about November 13, 2001.  It was not until January ___ that Nationwide denied coverage, violating Connecticut General Statutes Sec. 38a-816(15)(B), which requires an insurance company to a claim within 45 days of the submission of the proof of loss by the insured.  Nationwide now claims in its Motion for Summary Judgment that the Plaintiff's policy with Nationwide is void as a matter of law for at least one of the following reasons: (1) that the Plaintiff submitted a sworn proof of loss containing material misrepresentations relating to the scope of the loss and seeking to be paid for items that were not present in the house and, therefore not damaged by the fire; and (2) the Defendant claims that the Plaintiff submitted an insurance application to Nationwide which contained false, material information relating to

2

the occupancy of the building before the fire.  The Defendant claims that no genuine issues of material

fact exists as to those two claims.

Nationwide has also refused to pay under the policy, claiming that Defendant Tomasz

Mierzejewski was responsible for the fire, although the Defendant has no evidence to support this claim

and notwithstanding the fact that no one has ever been charged with or arrested with respect to this

incident. Furthermore, Defendant claims that the original Proof of Loss submitted by the Plaintiff

wrongly claimed $285,673 for the "whole loss and damage," and $269,173 for the "reconstruction of the

dwelling.  Defendant's Brief, p. 3.  The Defendant also claims that Plaintiff's Amended Proof of Loss

was substantially less than the original and that this was done after "errors" were pointed out to the

Plaintiff at his examination under oath. Id. The Plaintiff maintains  that he did not wilfully conceal or

misrepresent material facts with regard to the proofs of loss with the intention of deceiving the

Defendant Nationwide, and that the Defendant's claims to the contrary are entirely without merit.

Accordingly, contrary to what the Defendant claims, the policy of insurance under which the Plaintiff is

seeking recovery for his loss is not void.

The Plaintiff also maintains that, contrary what the Defendant claims, he made no

misrepresentations with respect to the insurance application ("Application"), that he never knowingly

represented in the Application  that the premises were owner -occupied or that they had two occupants.

If any misrepresentations can be ascribed to him, they are legally"innocent" misrepresentations, made by

3

the Defendant's insurance agent without Plaintiff's knowledge or consent. The Application was filled out by Defendant's insurance agent who wrongfully and fraudulently entered the information by asking Plaintiff questions not in the policy Application form and using the information thereby obtained to provide erroneous answers to questions regarding occupancy appearing on the form. Defendant's agent knew that the Plaintiff relied on him because Plaintiff could not adequately read or write the English language, could not verify what was being inserted in the application and had to rely on the agent to provide the necessary correct answers. Accordingly, contrary to what the Defendant claims, the policy is not void for any alleged concealments or misrepresentations of material facts allegedly made on the Application signed by the plaintiff nor was there any intent by the Plaintiff to deceive the Defendant.

## II.    LEGAL ARGUMENT

## A.    STANDARD OF REVIEW

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction.... The determinative question is the intent of the parties, that is, what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.... If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning.... However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim and cover the loss must, in preference, be

adopted.... [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citation omitted; internal quotation marks omitted.) Travelers Ins. Co. v. Namerow, 261 Conn. 784, 796 (2002). "It is a basic principle of insurance law that policy language will be construed as laymen would understand  it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (Internal quotation marks omitted.) O'Brien v. United States Fidelity & Guaranty Co., 235 Conn. 837, 843 (1996).

    "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ...In deciding a motion for summary judgment, the ...court must view the evidence in the light most favorable to the nonmoving party ... The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ...and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 549-50 (2002).  On summary judgment it is not the function of the court to determine what is likely but rather, whether there is a

5

genuine issue of material fact. <u>Greenberg v. Puerto Rico Maritime Shipping</u>, 835 F.2d 932, 936 (1st Cir.1987). "[T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) <u>Middlesex Mutual Assurance Co. v. Vaszil</u>, 89 Conn.App. 482, 493 (2005). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) <u>Buell Industries, Inc. v. Greater New York Mutual Ins. Co.</u>, supra, 259 Conn. at 550.

"An insurer who raises this special defense [of concealment or misrepresentation] must prove only that the insured *wilfully concealed or misrepresented a material fact with the intention of deceiving the insurer* ...Unlike a party asserting a cause of action for common-law fraud, an insurer who raises the special defense of concealment or misrepresentation does not have to prove that the insurer actually relied on the concealment or misrepresentation or that the insurer suffered injury ... [I]n the case of an insurance contract, the consequence of the alleged concealment or misrepresentation is the forfeiture of a contractual benefit, and therefore the burden of proof normally applicable to contractual claims, the preponderance of the evidence standard, should control." (Citations omitted.) <u>Rego v. Connecticut Ins. Placement Facility</u>, 219 Conn. 339, 346-47 (1991).

As noted above, in order to prevail on the special defense of concealment or misrepresentation, the defendant insurer is must prove "that the insured wilfully concealed or misrepresented a material fact *with the intention of deceiving* the insurer." (Emphasis added.<u>) Rego v. Connecticut Ins. Placement</u>

Facility, supra, 219 Conn. at 346. The penalty of forfeiture of insurance benefits for fraud "does not apply [w]here the false [representation] was not intentionally false, or [where] the false [representation] was] not intentionally so, but made through mistake or an opinion honestly entertained ···" (Internal quotation marks omitted.) Aetna Casualty & Surety Co. v. Pizza Connection, Inc., 55 Conn.App. 488, 496 (1999). "A material fact is wilfully concealed or misrepresented if the insured knew it was untrue when it was made ... A mere honest mistake ... will not forfeit payment under the policy." (Citations omitted.) Bauco v. Hartford Fire Ins. Co., 36 Conn. L. Rptr. 802, 804 (2002); see also Davis-Scofield Co. v. Reliance Ins. Co., 109 Conn. 686, 689 (1929) ("The fraud or false swearing by an insured after a loss which will bar recovery for the loss is the intentionally false swearing. Where the false swearing was not intentionally false, or the false statement not intentionally so, but made through mistake or an opinion honestly entertained, neither falls within the term 'fraud or false swearing' as used in this provision.").

**B.      POLICY NOT VOID BECAUSE THE PLAINTIFF TOMASZ MIERZEJEWSKI IN HIS SWORN PROOF OF LOSS DID NOT WILFULLY CONCEAL OR MISREPRESENT A MATERIAL FACT WITH THE INTENTION OF DECEIVING THE DEFENDANT INSURANCE COMPANY**

Plaintiff, Tomasz Mierzejewski, has submitted an Affidavit wherein he states that he understood that the Proof of Loss he was required to fill out requested him to provide the Defendant with an estimate of the total replacement value a fully completed building. Plaintiff's Affidavit, Par. 13-16, 22,

7

26.  Plaintiff's misunderstanding of what was required does not constitute a material misrepresentation that would void the policy, and his subsequent and voluntary re-submission of an Amended Proof of Loss correctly reflected the value of the building at the time of its destruction by fire on or about July 7, 2001.  See Original Proof of Loss, dated October 4, 2001, attached hereto as Exhibit A and Amended Proof of Loss, dated November 13, 2001, attached as Exhibit B.

The Defendant's Policy provides : "We do not provide coverage for an insured who has _by design_ concealed or misrepresented a material fact or circumstance relating to this insurance." Policy, Section I and Section II. (Emphasis added.)  The words "by design," ordinarily mean "wilfully" or "intentionally." See Simpson v. State Mut. Life Assurance Co. of America, 135 Vt. 554, 556-57, (1977) (court may use standard works such as dictionaries to aid interpretation of ambiguous insurance contracts).  As the Plaintiff has stated "This represents the amounts that would be necessary to rebuild a house." Examination Under Oath (EUO), 11/1/01 p 110 (attached hereto as Exhibit D).  Plaintiff has also stated in his Affidavit that he did not intentionally misrepresent or conceal a material fact regarding the Proof of Loss. Plaintiff's Affidavit, Par. 47-51   He also stated in his EUO that he understood that he was entitled to the replacement cost of the completed building under the Policy, and he, therefore, thought that the original Proof of Loss that he filled out required him to determine such replacement cost.  EUO, 11/1/01 p.110.. In Schedule "B" of the original Proof of Loss [Exhibit A], the Plaintiff lists the "actual cash value" of the building as $200,000 and, also in Schedule B, under "loss and damage," he

8

lists the "dwelling replacement value" as $269,173.00.  What the Defendant Nationwide meant by "The Whole Loss **_and_** Damage" in Paragraph 7 of the Proof of Loss and "Loss **_and_** Damage" schedule B on the next page, is ambiguous and is _not_ defined in the aforesaid Proof of Loss form prepared by Nationwide.  The Plaintiff believed this to mean the total "dwelling replacement value" and so indicated in Paragraph 9 and on Schedule B in the original Proof of Loss form.  The Plaintiff confirms this understanding in Paragraph 18 of his Affidavit.   Furthermore, in paragraph 6 of the original Proof of Loss form, the Plaintiff states for "Actual Cash Value of said property *at the time of loss*," that such value, in the Plaintiff's words, was  for the "building only," and amounted to "$200,000."  Additionally, in paragraph 7 of the original Proof of Loss, where Nationwide requests "The Whole Loss and Damage," but does *not* include the words "at the time of loss," the Plaintiff has entered the completed value of the building, as being $269,173 and "personal property" as amounting to $16,500, for a total of $285,673.  This total of $285,673 is further clarified by the Plaintiff in paragraph 8 of the Proof of Loss where the Plaintiff himself states that it represents "replacement value."

The Plaintiff has, therefore, submitted evidence showing that he did **_not_** by design conceal or misrepresent a material fact as to the values stated in the original Proof of Loss [Exhibit A], nor did he *intend* to deceive the Defendant with respect to said Proof of Loss.  Subsequently in his EUO, when it was brought to his attention, the Plaintiff freely admitted his error in misunderstanding what Nationwide's original  Proof of Loss form required. EUO, 11/1/01, p. 110.. Subsequently the Plaintiff

submitted an Amended Proof of Loss, Exhibit B attached hereto, correcting such error.  In Paragraph 6 of said Amended Proof of Loss, the Plaintiff indicated that the "actual cash value at the time of the loss" for the "building only" was, more precisely, $163,000 and, in paragraph 7, that the "whole loss and damage" *at the time of the loss* amounted to $163,183 for the building, $16,500 for personal property and an additional $11,300 for cleanup, for a total of $190,983.  See Schedule B, Exhibit B.  Note that "Exhibit A" attached to the original Proof of Loss, is entitled an "Estimate of a Three Family House With a Size: 44X28," whereas "Exhibit A" attached to the Amended Proof of Loss is entitled "Estimate of Fire Loss–Building."  This further confirms that in the original Proof of Loss, the itemization attached thereto as "Exhibit A"  was an "estimate" for a completed "three family house with a size 44/28," i.e., for the replacement value of a fully completed building, whereas the itemization labeled "Exhibit A" in the Amended Proof of Loss was an "estimate of fire loss" for the building at the time of the loss.

The Defendant has cited G & M Auto Supply, Inc. v. American Fidelity Insurance Co., 1990 WL 483668 (D. Conn.) in claiming that an insured "may not simply "fix" a fraudulent claim and expect to be paid the valid amount of the claim."  Defendant's Brief, p. 6.  First, it is important to note that this case *went to trial*, and was *not* decided on a summary judgment. Id. at *3.  The evidence produced at trial indicated a material discrepancy, not in the method of computation, as in the present case, but in the computation itself, which was at odds with the company's balance sheets just prior to the loss.  The trial court found that "the gross exaggeration cannot be excused as misestimates in allocation of value, or as

10

mathematical errors, or even as possible "puffing" for bargaining purposes" but was rather a magnification of alleged losses" which evidenced an "intent to deceive."  Id. at *3.

It should be noted that in the present case, the Defendant does not contest that the total value of the completed building was approximately $300,000, since the Defendant's own appraisers had come to that conclusion and had requested that the Nationwide agent tell Plaintiff to increase his policy limits and pay the increase in premium therefor, which premium payment the Plaintiff then made..  Noting that  this increase in policy limits went into effect shortly before the fire, the Defendant's Ohio home office's suspicion were undoubtedly aroused  that  the Plaintiff may have committed arson to collect the proceeds of the Policy, whereas a check would have revealed that this increase in coverage was demanded by the Defendant's agents, and not the insured.  Thereafter, everything that the Plaintiff did was colored and construed by the aforesaid Defendant's suspicion, which suspicion, however, lacked any basis in fact.  In the present case, the Plaintiff admitted that the values in the original Proof of Loss did not reflect the value of the building at the time of the loss, but rather were entered by the Plaintiff insured in good faith as estimates of the full replacement value of the building  when completed.  Paragraph 7 of the Proof of Loss form *prepared by the Defendant Nationwide*, unlike paragraph 6, does not ask for the whole loss and damage "at the time of the loss."  Paragraph 7, therefore, is ambiguous and, accordingly what was meant by "The Whole Loss and Damage" cited therein presents a genuine issue of material fact.  The Plaintiff interpreted Paragraph 7 to mean the whole replacement value of the building when fully

11

completed, as provided for in the policy.  Plaintiff's policy, in fact, does provide for full replacement

value in case of a total loss by fire at any stage of the construction, but the full replacement value will be

paid only after the building has been completely finished, and until then, only the replacement value of

the building at the time of the loss can be obtained.

The other cases cited by the Defendant involving claims fraudulent misrepresentation with respect

to the Proof of Loss can also be distinguished.  Allstate Insurance Co. v. Priga, 810 F. Supp. 373, 376 (D.

Conn. 1992), was a case tried to the court, and not decided on a summary judgment. Id. at 374.  The issue

in Priga was whether the insured had intentionally made a material misrepresentation in claiming that at

the time of the fire loss he resided on the property, when in fact he did not.  At the trial Priga testified that

the statements he had made regarding living on the property at the time of the loss were false.  The trial

court determined that the *admittedly* false statements were material misrepresentations, having "been

calculated either to discourage, mislead or deflect the [insurer]'s investigation in any area that might seem

to the [insurer] a relevant or productive area to investigate." Fine v. Bellafonte Underwriter's Ins. Co., 725

F.2d 179, 184 (2d Cir.1984). In the present case the Plaintiff at no time sought to "discourage, mislead or

deflect" Defendant insurer's investigation.   As will be discussed later, the Defendant Nationwide's agent

had filled out the insurance application on behalf of the Plaintiff, and the agent, *not the Plaintiff*, had

indicated on the application form that the premises were owner occupied by two parties  See **Exhibit D.**

Federal Insurance Co. v. Bloodworth, 1987 CCH Fire and Casualty Cases 151, 152, another case

cited by the Defendant, also appears to have gone to trial, rather than being decided on a summary

judgment.  That case  involved "concealment and misrepresentations relating to the value of allegedly

stolen property."  Defendant's Brief, p. 6. and appears to have no relevance to the present case involving

replacement value in a fire loss.  At trial the insurer in <u>Bloodworth</u>, supra,  was able to present evidence

as to the items actually stolen and their true value, thereby showing that the insured intentionally

concealed and/or misrepresented the same. The Defendant insurer, as the moving party in the present

case, has failed  to show that there was any "design" by the Plaintiff to deceive the insurer by

concealment or misrepresentation a material fact where the Plaintiff presented his figures in the original

Proof of Loss in terms of full replacement value.  Any error in using this method of calculation was due

to the ambiguity of the terms in the Proof of Loss form prepared by Nationwide.

     The Defendant also cites <u>Ofstein v. National Mutual Insurance Co.</u>, 5 Conn. Ops. 585 (May 5,

1999)(Aurigemma, J.), a state case,  for its claim that the penalty for making false statements is a voiding

of the entire policy, but fails to show *in what context* the statements in the present case were allegedly

false.  If the Plaintiff was correctly stating the full replacement value of the building when completed,

then the figures in the original  Proof of Loss are correct and Plaintiff made no false statements.

     In <u>Ofstein</u>, which was decided on a motion for summary judgment,  Judge Aurigemma made

several crucial determinations.  The Plaintiff claimed that certain very expensive items had been stolen

from his insured sailboat, but *admitted* to the Old Saybrook Police that the radar monitor which had been

<p align="center">13</p>

listed as stolen, had actually been removed from the boat by the Plaintiff and a friend in order to "help compensate for the deductible." The plaintiff's admission in that case was so conclusive that in the one page memorandum in opposition to the insurer's motion for summary judgment, plaintiff's counsel did not claim that there were any disputed issues of material fact and proferred only one legal argument:   that "the fraud and concealment clause did not void the insurance policy because Nationwide continued to accept premiums after the boat theft claim and did not cancel the policy."   .  The court rejected this argument as "not reasonable" and found that "where there are no disputed facts, but only a dispute as to an issue of law ... there is no real issue to be tried."

A falsification similar to <u>Ofstein</u> was shown and admitted in another case cited by the Defendant, <u>Rocco v. Continental Insurance Co.</u>, 2003  WL 21235478 (2003), where again, *after a full trial*, the Plaintiff was found to have lied about the theft of his boat shortly after he had obtained marine insurance for it, including claiming a false purchase price, alleging a non-existent honeymoon and failing to report the alleged loss to the police for two weeks.  <u>Id.</u> at *2, 3.  The Defendant has also cited <u>Longobardi v. Chubb Ins. Co. of New Jersey</u>, 121 N.J. 530 (1990) and <u>American Diver's Supply & Manufacturing Corp. v. Boltz</u>, 482 F.2d 795, 798 (10th Cir. 1973), neither of which is relevant to whether the issues raised therein can be determined on a summary judgment motion.  <u>Longobardi</u>, supra, also involved a trial of the issues rather than a motion for summary judgment.  The Court in <u>Longobardi</u> noted that "for an insurer to void a policy because of a post-loss misrepresentation, the misrepresentation must be *<u>knowing</u>* and

14

*material.* (Emphasis added.) Id .  A mere oversight or honest mistake will not cost an insured his or her

coverage; the lie must be wilful. Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 95-97, 3 S.Ct. 507, 515-

16, 28 L.Ed. 76, 82. Longobardi had unequivocally lied about having prior insurance and prior appraisals

for his Hummel figurines which had been stolen during a burglary.  The prior appraisers had previously

been convicted of insurance fraud involving phony appraisals and bogus burglaries to collect on "stolen"

items.  Here again, unlike in the present case, a trial revealed a clear intent to defraud the insurance

company.  In the other case cited by the Defendant, American Diver's Supply& Manufacturing Corp. v.

Boltz, 482 F.2d 795 (10th Cir. 1973), evidence adduced at a hearing in bankruptcy court showed that the

insured, after the fire but before the insurance adjuster arrived, transferred large amounts of undamaged

inventory and did not disclose such fact to adjuster investigating the loss.  The Court of Appeals

concluded that this type of fraud voided the policy and relieved the insurance company of payment, even

though no proof of loss had been filed.  The present case, however, does *not* involve willful, immoral or

dishonest acts, but mistake and misunderstanding of the information sought in the Proof of Loss  resulting

from ambiguity in wording and from Plaintiff's limited English language skills.     "Ordinarily, where it

appears from the evidence that there was an overestimate of value, the determination of whether the

insured acted honestly and in good faith in making such valuation, or intended to defraud the insurer is a

question of fact for the jury ..." 5A J. Appleman & J. Appleman *Insurance Law & Practice* Sec. 3589.  In

this case, there is no evidence that there was any intent to defraud.  Due to the ambiguities in Paragraph 7

15

of the Proof of Loss form, previously cited,  the insured initially submitted the replacement value for a completed building, $269, 173,  instead of the value of the building at the time of the loss.  Accordingly, the total amount claimed under the policy, paragraph 9 in the original Proof of Loss (Exhibit A) is approximately $95,000 higher than the amount claimed in Paragraph 9 of the Amended Proof of Loss. Defendant Nationwide has introduced no evidence of an intentional attempt by the Plaintiff, Tomasz Mierzejewski to deceive the insurer.  To the contrary, the Plaintiff has been explicit in citing and identifying what was being claimed by him in the forms.  Genuine issues of fact material fact, therefore, exist in this case as to the Plaintiff's understanding of what was required to be stated in the proof of loss, whether there was ambiguity of the wording in the forms prepared by the insurer, whether any misrepresentations were material, and whether Plaintiff intended to deceive the Defendant insurer.  The existence of such issues precludes summary judgment in this case.

**C.**     **THE POLICY IS NOT VOID BECAUSE THE INSURED TOMASZ MIERZEJEWSKI DID NOT, IN HIS INSURANCE APPLICATION, WILFULLY CONCEAL OR MISREPRESENT A MATERIAL FACT WITH THE INTENTION OF DECEIVING DEFENDANT INSURANCE COMPANY**

An insured makes a knowing misrepresentation only when he submits an answer to a question in the application other than that which he has reason to believe is true, Lazar v. Metropolitan Life Insurance Company, 290 F.Supp. 179, 181 (D.Conn.1968). Accordingly, it follows that an insured should not be held responsible for an answer in the application if he was justifiably unaware of its falsity, had no actual

16

or implied knowledge of its existence, and was not guilty of bad faith, fraud, or collusion. Mathis v.
Minnesota Mutual Life Ins. Co., 302 F.Supp. 998, 1004 (M.D.N.C.1969); see also Guariglia v. John
Hancock Mutual Life Ins. Co., 139 Conn. 54, 57 (1952).

The Defendant Nationwide relies on the case of Pinette v. Assurance Company of America, 52
F.3d 407 (2d Cir. 1995), wherein the Second Circuit Court of Appeals affirmed the Connecticut District
Court's granting of a motion for summary judgment in favor of the defendant insurer.  In the present case,
as in Pinette, the insurance carrier on the defense of material misrepresentation as cause for voiding the
policy, must prove three elements: (1) a misrepresentation (or untrue statement) by the plaintiff which
was (2) knowingly made and (3) material to defendant's decision whether to insure.  "Innocent"
misrepresentations-those made because of ignorance, mistake, or negligence-are not sufficient grounds
for rescission. See Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 691-92 (1991).

The Plaintiff has indicated in his Affidavit that his knowledge of English was limited and that he
relied on Defendant's agent, who was filling out the application, to do so correctly. Plaintiff's Affidavit,
Connecticut courts have held that even if the person orally presenting answers to the application does not
read or write English, if the person filling out the form does have a command of English and acts as an
interpreter, then the insured must take reasonable steps  to make sure that the form is properly filled out.
See Bahr v. Prudential Insurance Company of America, 5 Conn. Cir. Ct. 620 (1969) (citing Russo v.
Metropolitan Life Ins. Co., 125 Conn. 132, 137 (1939).  In Bahr, however, it was the plaintiff insured's

17

son who had an excellent command of English and filled out her insurance application.  He had no reason to falsify the answers his mother gave to the questions asked in the application and he would be expected to answer truthfully any questions his mother may have had. In the present case, however,  it was the Defendant Nationwide's *agent* who filled out the application and who had a vested interest in obtaining the policy for the Plaintiff, namely that the agent would then get his commission.  Furthermore, in this case the agent *knew* that the Plaintiff did *not* live at 83 West Street because the agent had been sending auto insurance premium invoices to the Plaintiff at his actual residence, which was 100 Broad Street, Apt W4, New Britain Connecticut, and not the location of the building being renovated at  83 West Street, New Britain, Connecticut. See Plaintiff's Affidavit. Plaintiff had never lived at the latter address. Id. Furthermore, the agent asked  questions in Polish of the Plaintiff, but *he did not translate them*  in the form that they appeared in the application.  The agent only asked the Plaintiff  "Do you and your family plan to reside at 83 West Street?" See Plaintiff's Affidavit, Par..  The agent then filled in the blank on the application to indicate that the premises were owner occupied and that two people were residing at the 83 West Street address.  Since the Plaintiff did not adequately read or write English at the time the application was made out (indeed, that is the very reason the agent was filling out the application), a personal review of the application before signing would have been futile. In this case fraud was committed by the Defendant's own insurance agent, who knew that Plaintiff did not live at 83 West Street and who also knew where the Plaintiff actually lived.  Defendant's agent apparently knew that Plaintiff

18

was married, but not that he had two children living in his household.  Therefore, the agent fraudulently asserted on the Application that the premises were owner occupied by two individuals.  Under the circumstances, this amounts to nothing more than an "innocent" misrepresentation by the Plaintiff, since it was fraudulently made without his knowledge or consent.

Furthermore, the Nationwide agent as well as the appraisers sent out on behalf of Nationwide to evaluate the house for insurance purposes, were aware that the house at 83 West Street  and was being totally renovated and, that during the renovations the premises were temporarily unoccupied..  Since the Plaintiff was a general contractor, who had indicated that, after renovations were complete he planned to live at the house with his family and rent out the rest, the Defendant accepted the risk that it was insuring vacant premises that were being renovated and, presumably, fixed the premium accordingly.

Furthermore, the Defendant insurer is estopped, due to the fraudulent conduct of its agent,  from claiming that the Plaintiff intentionally  materially misrepresented occupancy in his insurance application.  A genuine issue of material fact is presented in this case as to whether the credible evidence regarding how the application was filled out rests with the Plaintiff's version, as set forth in his Affidavit, or whether the Defendant's insurance agent has a different version of the alleged facts. A further genuine issue of material fact is presented as to whether the Plaintiff innocently and unknowingly, or knowingly and wilfully, made a material misrepresentation on his insurance application.  The Defendant has not produced any evidence to negate the factual allegations made in Plaintiff's Affidavit.  "Innocent"

19

misrepresentations are those in which the applicant does not know that the information he is providing is false when made.  See, e.g. <u>Middlesex Mutual Assurance Co. v. Walsh</u>, 218 Conn. 681, 691-92  (1991).  "The law requires that the insured shall not only, in good faith, answer all interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written."  <u>Ryan v. World Mut. Life Ins. Co.</u>, 41 Conn. 168, 172 (1874).  In <u>Ryan</u>, unlike in the present case, the Plaintiff apparently understood English, but never read the policy to discover the wrong answers entered by the insurance agent.  In <u>Ryan</u>, the court held that reasonable diligence by the insured could have defeated the fraudulent intent of the agent since, obviously, the insured read and understood English and merely failed to read the policy.  In the present case, the fraudulent intent of the agent could not be defeated by the Plaintiff because he neither read nor understood English and, consequently,  had to accept the questions asked by the agent and the entries made by him as being the true questions and the correct answers as given by the insured.  Reading the application in this case would have been futile due to Plaintiff's English language disability.

This case can also be distinguished from <u>Bahr v. Prudential Insurance Co.</u>, supra, where the Plaintiff, who could not speak or read English, failed to read the application, although her son, who filled it out without fraudulent intent, could have translated and answered any questions for her.  In the present case, the Plaintiff in his Affidavit states that Defendant's agent misstated the questions to the Plaintiff, in effect providing a *fraudulent* translation of the questions in the application, rather than just providing a mistaken answer, as in <u>Bahr</u>.  Plaintiff, therefore, remains "innocent" with respect to the answers

20

provided in the application and any material misrepresentations were neither made nor adopted by him, but resulted from the fraud of the Defendant's agent who had a vested interest in obtaining a commission.

Whether the Plaintiff, lacking the requisite reading and writing skills in English, properly relied on the questions posed by the Defendant's agent, and could not by reading the policy determine that it contained wrong answers to the questions sought, depends on a resolution of the factual testimony and the determination of the credibility of the witnesses produced at trial, and these constitute genuine issues of material fact in this case.

In <u>Pinette</u> , supra, cited by the Defendant,  the insurance agent filled in the loss history incorrectly on the application for insurance, and Pinette then signed the application without reading it.   Plaintiff admitted that Julien Pinette's failure to review the application was due to his own "carelessness".  <u>Pinette v. Assurance Company of America</u>, supra 52 F. 3d at 411. The court found that even if the insurance agent had created the error in the application, Plaintiff's misrepresentation was not thereby rendered "innocent" when the Plaintiff admitted  that he failed to read the application before signing it. <u>Id.</u>

However, Connecticut courts have recognized another exception to this rule, namely, if the insurance agent induces the applicant to sign the application without reading it. See <u>Lewis v. John Hancock Mut. Life Ins. Co.</u>, 443 F. Supp. 217, 219 (D. Conn.1977) ("If through the conduct of defendant's agent, [plaintiff] failed to read over the questions and answers in the applications, he would in effect have made no misrepresentations at all ....").  In <u>Lewis</u> the defendant insurance company claimed

21

that Lewis, the insured, had misrepresented his prior criminal record on the insurance application.  Lewis

died in a gun accident, but his widow claimed that the defendant's insurance agent had filled out the

application and, similar  to what happened in the present case,  had never asked Lewis the prior criminal

record questions, but had merely filled in the answers himself, indicating that Lewis had no prior criminal

record.  The agent admitted in his deposition that, contrary to his usual practice, he had failed to caution

Lewis to read the application before signing it.  In denying a motion for summary judgment, the court in

Lewis found that genuine issues of material fact existed and ruled that an insured should not be held

responsible for an answer in an insurance application if he was "justifiably unaware of its falsity", if had

no actual or implied knowledge of the existence of such falsity, and if he was not guilty of bad faith, fraud

or collusion.  Lewis v. John Hancock Mutual Life Ins. Co. , supra, 443 F. Supp. at 218; see also Guariglia

v. John Hancock Mutual Life Ins. Co., 139 Conn. 54, 57 (1952).

In the present case, the Plaintiff Tomasz  Mierzejewski, was not guilty of bad faith, fraud or

collusion because some of the questions that were posed to him by the agent filling out the form were not

the question that appeared on the form, but were made up by the agent.  Since Tomasz at the time could

not read English, he was forced to rely on the good faith of the Defendant's agent who filled out the form,

and he could not have known that some of the questions that were asked, and to which he gave truthful

answers, did not even appear on the form.  Nor could the Plaintiff know that some of the answers he gave

were entered by the agent as answers to other questions appearing on the form involving occupancy.

22

The court in <u>Lewis</u> also pointed out that a genuine issue of material fact, precluded summary judgment, existed. The factual question remained whether the untrue statement regarding the insured's criminal record was material to the risk in the contract of insurance.  <u>Lewis v. John Hancock Mutual Life Ins. Co.</u>, supra, 443 F. Supp. at 218.   In addition, there also remained the contested issue of whether Mr. Lewis read the applications before he signed them. "If <u>*through the conduct of defendant's agent*</u>, Mr. Lewis failed to read over the questions and answers in the applications, he would in effect have made no misrepresentations at all ..." <u>Id.</u> at 219.   Similarly,  a genuine issue of material fact in the present case whether Tomasz Mierzejewski justifiably could not have read the English language text because he understood little or no English,  and therefore properly relied on the insurance agent.

In the present case, it is also a genuine issue of material fact whether the untrue statement that any persons were in fact occupying the building being renovated by the Plaintiff was material to the risk in the contract of insurance. With respect to materiality, "[u]nder Connecticut law, a misrepresentation is material 'when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." ' <u>Pinette v. Assurance Company of America,</u> supra*,*  52 F.3d at 411 (quoting <u>Davis Scofield Co. v. Agric. Ins. Co.</u>, 109 Conn. 673, 678 (1929)) There is no indication in that any specific number of occupants  would have been material, including the designation of 0 or "none." An similar situation is presented when any new house is being built:  insurance can be issued during the

23

period of construction, but there can be no occupancy until the building is completed and a certificate of occupancy granted.  Furthermore, the Defendant itself demanded a premium from the Plaintiff for the total amount of insurance coverage on a fully completed house, knowing that the building, at the time the insurance was issued, was incomplete.  The Plaintiff had paid the full premium before the loss occurred, and that premium, therefore, covered the risk insured, whether or not there was any occupancy.

Accordingly, the Defendant Nationwide is also estopped  from claiming that the answer in the insurance application that the property at 83 West Street was occupied was material to the insurance contract.  Under Connecticut law, "any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury...." ' " (Citations omitted.) O'Sullivan v. Bergenty, 214 Conn. 641, 648 (1990). It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel; see Cleary v. Zoning Board, 153 Conn. 513, 518 (1966); and whether that burden has been satisfied in a particular case is an issue of fact. Hanover Ins. Co. v. Fireman's Fund Ins. Co., 217 Conn. 340, 350 (1991); New York Annual Conference v. Fisher, 182 Conn. 272, 300, 438 A.2d 62 (1980).  In this caseDefendant's appraisers made an appraisal of the property while the renovations were still being made.

Finally, under Connecticut law, it is well settled that unintentional misrepresentations may not be

24

a sufficient basis for an insurer to cancel a life insurance policy. Lewis v. John Hancock Mutual Life Ins. Co. , supra, 443 F. Supp. at 218.; see also Mt. Airy Ins. Co. v. Millstein, 928 F. Supp. 171, 175 (D. Conn. 1996). Only material representations, when relied on and untrue and known to be untrue, invalidate policy without design to defraud  State Bank & Trust Co. v. Connecticut General Life Ins. Co. 145 A. 565 (Conn. 1929).  The present case falls within that narrow category where the misrepresentation, if it existed, was "innocent" in that it was justifiably unintentional and no bad faith, collusion or fraud attached to the Plaintiff. Lewis v. John Hancock Mutual Life Ins. Co. , supra, 443 F. Supp. 219. Therefore, whether the misrepresentations under the facts of this case were "innocent" and did not invalidate the policy is a genuine issue of material fact in this case.

Defendant has claimed  that matters of special inquiry are deemed conclusively material, citing State Bank & Trust Co. v.  Conn. Gen. Life Ins. Co. , 109 Conn. 67, 71 (1929).  Defendant's Brief, p. 9. In the aforesaid cited case, the applicant on a non-medical policy gave knowingly false answers as to his health and the court ruled that, with respect to a health policy where no medical examination is required and the insurer relies entirely on the truthfulness of the applicant in giving information as to his health, the applicant's answers "are especially material as forming the basis upon which the contract of insurance is entered into." State Bank & Trust Co. V. Conn. Gen. Life Ins. Co., supra, 109 Conn. 71.  The court, however, also agreed that such answers to questions regarding health may still be "substantially true" when the applicant denies he has had a health problem by failing to mention an ailment so slight and

25

temporary that it left no impression on his memory. Id.  Similarly, in Pinette, prior loss history was

deemed material information in a policy application, and since the application specifically requested this

information, the district court's finding of materiality was sustained.  Pinette v. Assurance Company of

America, supra, 52 F.3d 411.

The Defendant in the present case claims that the misrepresentations in the application "are as

serious as those in Pinette.  This is clearly not the case.  As the court in Pinette observed, prior loss

history in an application for property insurance and prior medical history in an application for  medical

insurance have been deemed to be material as a matter of Connecticut law.  Pinette v. Assurance

Company of America, supra, 52 F.3d 411. In the present case, no evidence has been presented by the

Defendant in its summary judgment motion that the information regarding occupancy was material.

Furthermore, Tomasz Mierzejewski has stated in his Affidavit that the Defendant's insurance agent and

its appraisers knew that no one was occupying the premises at 83 West Street. Defendant's agent was

sending Nationwide's insurance premium bills to the Plaintiff's correct address at 100 Broad Street in

New Britain.  See Exh E.  In addition the Defendant's appraisers had examined the premises during the

construction prior to requiring additional coverage.  Finally, Plaintiff had paid the full increased premium

prior to the loss. Accordingly, whether the question of occupancy was material in this case presents a

genuine issue of material fact.

The Defendant also claims that there is no genuine dispute that Plaintiff's so-called

26

misrepresentations as to where he lived were knowingly made.  Defendant's Brief, p. 10.  This is contrary

to what the Plaintiff has stated in his Affidavit, and therefore presents a genuine issue of material fact.

Furthermore, Defendant's agent, who filled out the Application knew where the Plaintiff actually lived,

sent Nationwide's insurance bills there and received payment by check from the Plaintiff, which checks

were imprinted with Plaintiff's correct address.  See Exhibits C . Accordingly, a genuine issue of material

fact is raised as to whether the representations were knowingly made or fraudulently entered on the

application by Defendant's agent.

    The Defendant relies on Paul Revere Life Insurance Co. v. Pastena, 52 Conn. App. 318 (1999)

("Paul Revere") for the claim that the court should on a summary judgment ruling rescind an insurance

policy on the grounds of application misrepresentation.  Defendant's Brief, p. 11.  In that case also, the

company's insurance agent filled out the application and included incorrect information therein.  Id.  The

present case can, however, be distinguished from Paul Revere, supra. In Paul Revere,  the applicant for

disability insurance policy knowingly made the material misrepresentation that she would discontinue her

existing disability policy, and the court, therefore, on the insurer's motion for summary judgment, found

that the insurer was entitled to rescind policy upon learning that the applicant's prior policy remained in

effect.  The plaintiff-applicant, who read and understood English, admitted that she failed to read or

examine the application carefully, and the court ruled that this was not excusable neglect nor did it  cause

the misrepresentation to be "innocent".  Paul Revere Life Insurance Co., supra, at 324. The defendant was

a surgeon who, unlike the Plaintiff in the present case, thoroughly understood English. The defendant in her affidavit admitted that she "did not see or examine [it] carefully." Id. Based *solely* on the application and the defendant's affidavit, the court in Paul Revere granted the summary judgment. Id., fn. 5

While Pinette, supra, correctly notes that an insured has the duty to "inform himself of the content of the application signed by him," that duty presupposes that the insured reads and understands the language in which the policy is written. Under those circumstances, failure to read the application before signing cannot be excused, since it affords the insured the opportunity to correct any errors and/or omissions before signing the instrument and being bound by its terms. Otherwise, an intent to deceive can be inferred from the making of the false representations. Pinette, at 410-11. However, where the insured lacks the requisite ability to read and understand English, and relies instead on the Defendant's agent, who misrepresents the questions and falsifies the answers, for his own benefit, there can be no doubt that the Plaintiff insured cannot be charged with anything other than "innocent" misrepresentation.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000). On the facts of the present case, taking the allegations of the complaint and Affidavit of the Plaintiff to be true, there could not be a directed verdict. Accordingly, summary judgment is also precluded for this reason..

All of the other cases cited by the Defendant can also be distinguished from the present case. In

28

Fine v. Belletone Underwriters Ins. Co. , 725 F. 2d 179, 184 (2d Cir. 1984),  the insured was found to have lied regarding the condition of the sprinkler system  in an examination under oath conducted after the fire loss afire loss.  The case was *not* decided on a summary judgment, and the issue of the materiality of the misrepresentation was raised on appeal after a *full trial* in the court below.  In Allstate insurance Co. v. Priga, 810 F. Supp. 373, 376 (D.Conn. 1992), the insured gave a signed statement and also made a statement during examination under oath that he lived almost exclusively at the insured property prior to fire, when in fact he *admitted* on cross-examination that he had lived with his sister.  The court determined that this was a "material misrepresentation" voiding policy under Connecticut law.  In the present case, the Plaintiff readily admitted that he did not live at 83 West Street at the time of the fire and that the entry that the premises were owner occupied by two individuals, made by the Defendant Nationwide's agent was not true, that Plaintiff did not realize that it had been made,  and that Plaintiff had never made that representation.     Plaintiff, it should be noted, required and did have a Polish translator at his EUO, although Defendant's counsel initially repeatedly attempted to conduct the examination without the interpreter, who was present and had been summoned.

In Quinn v. Federal Kemper Life Insurance Co. __ F. Supp. ___, B90-CV-422 (D. Conn. April 28, 1995) and Federal Insurance Co. v. Bloodworth, 1987 CCH Fire and Casualty Cases 151, 153, unlike in the present case, the insureds themselves *wilfully failed to disclose the information*, understood English and thereby understood the information sought by the insurance company, and realized or should have

29

realized the materiality of the information requested, but unequivocally and knowingly lied. In the present case, the insured, Tomasz Mierzejewsk, did not knowingly make any misrepresentations on the Application with the intent to deceive Nationwide. . To the extent that Nationwide claims otherwise, a genuine issue of material fact is presented in this case.

**D.    SUMMARY JUDGMENT SHOULD BE DENIED AS TO ALL COUNTS**

Plaintiff has shown that if any misrepresentations were made, they were not knowingly made by the Plaintiff with the intent to deceive the Defendant insurer. Genuine issues of material fact remain to be tried in this case including, but not limited to: whether the Proof of Loss Forms were ambiguous as to what information was required; whether the Plaintiff misunderstood the forms; whether the Plaintiff, without the intent to deceive the insurer, indicated replacement value for a fully completed house on the original proof of loss; whether the subsequent Amended Proof of Loss was a good faith attempt to comply with what the Defendant insurer wanted on the Proof of Loss; whether any misrepresentations on the Application were "innocent misrepresentations" or no misrepresentations as to the Plaintiff; whether the Defendant's agent knowingly and falsely filled in the Application for insurance unbeknownst to the Plaintiff, who did not adequately understand and read English and relied on the agent for the truthfulness of the answers; whether occupancy was material in this case; and whether the Defendant through its agents servants and employees had knowledge of the unoccupied premises at 83 West Street and of Plaintiff's true address at the time of the Application. In any case, the question of whether the policy was

voided by *material* misrepresentations *knowingly or wilfully made* by the Plaintiff to *deceive* the

Defendant is a genuine issue of material fact under all the circumstances of this case.  Such issue can only

be resolved on a full trial, and not by summary judgment.

Furthermore, the record will show that the Court bifurcated this case, requiring that the issue of

coverage should be resolved first.  The Plaintiff's Complaint includes, besides the breach of contract

Count, other Counts claiming violations of CUIPA, CUTPA, negligence, and breach of the covenant of

good faith and fair dealing. A disposition of coverage by the Court could involve appeals before final

resolution, and therefore summary judgment as to these Counts is not appropriate for consideration.

**E.**     **SUMMARY JUDGMENT SHOULD BE ENTERED FOR THE PLAINTIFF TOMASZ**
        **MIERZEJEWSKI SINCE PLAINTIFF SUBMITTED HIS PROOF OF AMENDED**
        **PROOF OF LOSS IN NOVEMBER, 2001 AND DEFENDANT REJECTED IT ON**
        **JANUARY 25, 2002.**

The record will show that the  Plaintiff submitted his Amended Proof of Loss on November 13,

2001, but the Defendant did not reject it within the 45 day period as required by Connecticut General

Statutes Sec 38A-816(15)(B) See Exhibit E.  Pursuant to said statute, Defendant Nationwide can no

longer deny coverage, having failed to deny coverage within 45 days mandated by the aforementioned

statute.  The Plaintiff, therefore, moves that the court enter summary judgment in its favor requiring the

Plaintiff to pay the sums indicated in the Amended Proof of Loss submitted to the Defendant, but not

timely rejected by the carrier, as required by Connecticut General Statutes Sec. 38a-816(15)(B).

Summary judgment should, therefore, be entered by the Court on this clear and unequivocal record of untimely rejection of the Plaintiff's Proof of Loss by the Defendant.

**F.**    **SUMMARY JUDGMENT IS NOT APPROPRIATE IN THIS CASE.**

Federal Rules of Civil Procedure, Section 56 (c) provides in pertinent part that summary judgment shall be granted only,

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law

Defendant asserts that summary judgment is proper in cases involving misrepresentation and cites as authority for this Paul Revere Life Insurance Company, supra; Pinette v. Insurance Company of America, supra; Quinn v. Federal Kemper Life Insurance Company, supra, ; and Barrett v. Danbury Hospital, 232 Conn. 242, 255 (1995). All of these cases have been previously distinguished from the present case. In the majority of cases involving claims of misrepresentation, the issue of whether such misrepresentation was innocent or knowing, material or immaterial, was decided after a full trial, and not by summary judgment.

Barrett v. Danbury Hospital, supra, cited by the Defendant, was a medical malpractice case where the only issue was whether the Plaintiff had sustained a compensable Hiv related injury, regardless of whether the standard of care had been violated by the Defendant hospital. That issue involved only a

32

matter of law and was decided on summary judgment, despite a vigorous dissent. Id. at 253. Pinette v. Insurance Company of America, supra, was previously distinguished from the present case.  Pinette, who, unlike the Plaintiff in the present case,  read and understood English, admitted that his failure to review the completed application was due to his own carelessness, which the court found inexcusable. **[cite]** Paul Revere Life Insurance Co. v. Pastena, supra, also cited by the Plaintiff, can be distinguished from the present case in that in Paul Revere, the insured, a surgeon admitted that he* knowingly misrepresented to the insurance carrier that he would discontinue his prior policy with another company, which amounted to a condition precedent to the issuance of the policy with Paul Revere Life Insurance Company.  The court found that failure to discontinue the prior policy amounted to a material misrepresentation by the insured as a matter of law.  Finally, Quinn v. Federal Kemper Life Insurance Co., supra, another case cited by the Defendant involving summary judgment based on misrepresentation, involved a knowing misrepresentation to a medical examiner who prepared the medical record of the insured as part of his health insurance application.  The insured knowingly stated that he had had no prior heart problems, but after he died of a heart attack, investigation by the company revealed that he had, in fact, had a prior myocardial infarction heart attack.  Here again, unlike in the present case, a knowing misrepresentation was made with respect to a material matter in a health insurance policy.  The court in Quinn cited its own previous decision in Pinette v. Assurance Co. of America, supra, "Under Connecticut law ... a person may not claim that a misrepresentation is 'innocent' *solely* because the person failed to read the application

33

before signing it. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written" Quinn v. Federal Kemper Life Assur. Co. 1995 WL 760400, *2 (C.A.2 (Conn. (C.A.2 (Conn.),1995). (Emphasis added.)  Again in this case, as distinguished from the other cases cited by the Defendant, the insured read and understood English, but admittedly failed to read the policy to determine the correctness of the answers.  This failure amounted to the failure to use reasonable diligence in making sure that the answers are correct and did not make the misrepresentation an "innocent" one.

No case has held that an insured who does not read or understand English and relies on the insurance company's agent who fraudulently fills out the insurance application form, must afterward, and before signing it, go to an independent interpreter and get a translation of the application and the answers therein.  On the contrary, the insured in such a case has the right to rely on Defendant's insurance agent's honesty and accuracy in filling out the insurance application form.  Any misrepresentations in the application would be attributable to the agent and would be "innocent" misrepresentations as far as the insured is concerned.

Finally, the case of Norse Systems Inc. v.  Tingley Systems Inc., 49 Conn. App. 582, 591-92 (1998) is cited by the Defendant as setting forth the standard of review applicable to summary judgments. It is clear that in construing the complaint and Affidavit most favorably for the Plaintiff, genuine issues of material fact exist, and Plaintiff has presented sufficient evidence to show that the existence of these issue

precludes summary judgment in this case.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiff, Tomasz Mierzejewski, respectfully requests that

Defendant's Motion for Summary Judgment be DENIED.

<div style="margin-left: 50%;">

PLAINTIFF
TOMASZ MIERZEJEWSKI

_____/s/_____

Juri E. Taalman, Esq.
Federal ID ct 09377
Brignole, Bush & Lewis, LLC
73 Wadsworth Street
Hartford, CT 06106
(860) 527-9973
(860) 527-5929 fax

</div>

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was sent by first class mail this 16th day of

January, 2006, postage prepaid to the following counsel and all pro se parties of record:

Charles E. Hickey, Esq.
Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, Connecticut 06032-3084
(860) 677-0551
(860) 677-1147 (fax)

Mary C. Pokorski, Esq.
City of New Britain
Office of Corporation Counsel
27 West Main Street
New Britain, Connecticut 06051

_____/s/_____
Juri E. Taalman, Esq.

36