UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOMASZ MIERZEJEWSKI | ) | CIVIL ACTION NUMBER |
| Plaintiff | ) | 3:02 CV 752 (SRU) |
| vs. | ) | |
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | ) | |
| Defendants | ) | February 15, 2006 |

## AFFIDAVIT OF MARK GRZELAK

Mark Grzelak being duly sworn, deposes and says:

1. I am over the age of eighteen (18) years.

2. I understand and believe in the obligations of an oath.

3. This affidavit is based on my personal knowledge.

4. I was retained by the Plaintiff, to review and analyze certain cell telephone records and reports regarding the cell phone belonging to Tomasz Mierzejewski, and calls made to and from said cell phone on July 7-8, 2001 at 83 West Street, New Britain, Connecticut.

5. I have had twenty years of progressive telecommuications experience in the areas of systems design, implementation, project management and support, including technical background in voice, data, video and cable infrastructure.

EXHIBIT 3

6. I have technical certifications and/or have been involved as a consultant with Avaya Technologies, Nortel, Cisco systems, Bellcore ATM, Microsoft N.T., Siecor, AT&T/Lucent and Siemon Company.

7. I am the principal in my own communications company known as Virtual Communications, LLC, 54 Evergreen Road, Newington, Connecticut 06111.

8. Plaintiff's counsel provided me with, and I analyzed and reviewed, documentation regarding the fire at 83 West Street, New Britain, Connecticut, including: the examination under oath taken of Tomasz Mierzejewski dated October 12, 2001, November 1, 2001, and November 14, 2001; James S. Sylvester's report dated January 8, 2002 with attached Sprint tower information, Sprint call detail reports for cell phone number (860) 983-8047; billing periods ending December 4, 2000, January 4, 2001, February 4, 2001, March 4, 2001, April 4, 2001, May 4, 2001 June 4, 2001, July 4, 2001, August 4, 2001, September 4, 2001; New Britain Police Department search warrant / call detail records along with the attached police contiuation report and New Britain Police Department follow-up incident reports.

9. In preparing my review and subsequent report, attached hereto as Exhibit A, I also utilized Sprint supplied technical tower information, Sprint published coverage map information, and information supplied directly from Sprint

technical support staff, Sprint call detail and report information, and my own professional education, training and experience in the field of telecommunications technology and communications billing and reporting.

10. As a result of my investigation, review and analysis of the fire at 83 West Street, New Britain, Connecticut, I concluded that as a result of their dynamic design (as outlined in my report dated July 25, 2005, and attached hereto as Exhibit A) the cellular network existing in the Connecticut - Long Island - New York City area in question utilized any available network sources available to complete calls, including the use of far distant towers.

11. Based on my education training and experience, based on the flat topology of Long Island and other factors enumerated below, and taking into consideration the fewer number of towers existing there in 2001, it would have been possible for calls to be completed by towers in excess of the general parameter of six to ten miles.

12. From personal experience I have also known this to happen while traveling in the lower Fairfield County/Greater New York City region. On occasion during the same 2001 period of time it was not unusual for my cell phone to grab signal from a tower on Long Island, even though I was out of typical calling range. Also, in placing calls in the Waterbury area in Connecticut, signal was often pulled from

far distant towers in upstate New York.

13. Accordingly, for the reasons stated in Paragraphs 9 through 11, it would have been possible for calls to be completed by towers in excess of the general parameter of six to ten miles.

14. Therefore, it would not be at all unusual for a cell phone to "grab" a signal from a tower located in eastern Long Island, even though such person was somewhere in Brooklyn and out of typical calling range.

15. As part of my investigation, I reviewed the report of James S. Sylvester dated January 8, 2002, and attached hereto as Exhibit B. I noted that there is significant lack of consistent data and information which could be utilized in establishing an exact location for Mr. Mierzejewski on the dates and times in question.

16. The documentation in Mr. Sylvester's report established that no specific site location information can be established for several calls placed or received form Mr. Mierzejewsi's cell phone, since the Sprint documentation records them as "Undeveloped Cell Site," with no specific address or site number provided.

17. Furthermore, factors such as call traffic at any given moment, signal strength, terrain, obstructions, network problems, signal equipment, structures weather and other limitations or conditions can play a role in establishing and completing calls,

as is clearly stated in the Sprint coverage map information used by Mr. Sylvester. See Exhibit C

18  I also noted discrepancies in Mr. Sylvester's report as set forth in the first paragraph of page 2 of my report dated July 25, 2005.

19. As a result of the examination and analysis of the above records, the information made available to me by Plaintiff's counsel, and my own education, training and experience, I concluded that because of the lack of complete and accurate call detail and tower location information, together with the discrepancies previously enumerated, the information provided lacks sufficient credibility for determining the whereabouts of Mr. Mierzejewski for the night of July 7-8, 2001.

20. Given that the cellular network is dynamic in nature and is affected by conditions previously noted, calls placed may be served by cell towers well beyond "typical" calling range.

21. Based on the foregoing, I have also concluded that, even if complete information could have been provided in this case, determining the exact location of a person using a cellular network is not possible since cellular networks are designed for mobile communications and rely on multiple towers to connect and process calls from any given spot in a dynamic fashion over different network towers and equipment.

Under the penalties for perjury by law provided, the foregoing is true and correct to the best of my knowledge.

_____
Mark Grzelak

Subscribed and sworn to before me this fifteenth day of February, 2006.

_____
Notary Public
Commissioner of the Superior Court
My Commission Expires _____

STEPHANIE QUICK
Notary Public - Connecticut
My Commission Expires Feb. 28, 2007

**VIRTUAL COMMUNICATIONS, LLC**

## Documentation Review Report

### Tomasz Mierzejewski Case

July 25, 2005
By: Mark A. Grzelak

### Introduction:

The scope of this report surrounds the review and professional opinion related to documents supplied to Virtual Communications, LLC by Attorney Juri Taalman relating to the Tomasz Mierzekewski case. Documents supplied and reviewed include legal deposition materials dated October 12, 2001, November 1, 2001, and November 14, 2001. Also, Consultant James S. Sylvester response report with attached Sprint tower report information, Sprint billing call detail reports for cell phone number (860) 983-8047- billing periods ending December 4, 2000, January 4, 2001, February 4, 2001, March 4, 2001, April 4, 2001, May 4, 2001, June 4, 2001, July 4, 2001, August 4, 2001, September 4, 2001. Further, New Britain Police Department search warrant/call detail records along with attached police continuation report and Police Department follow-up incident reports. (Including plaintiff's exhibit 22 and exhibit 23).

The scope of this review and findings are limited to the area of telecommunications technology, communications billing and reporting. Any other areas relating to other aspects of this case are outside the scope of this report. Technical resources utilized in this review and report includes Sprint supplied technical tower information, Sprint published coverage map information, information supplied directly from Sprint technical support staff, Sprint call detail and report information and professional experience of Mark A. Grzelak.

### Findings & Response:

Upon close examination of consultant James S. Sylvester report, the attached Sprint tower detail information and other noted documentation I noted that there is significant lack of consistent data and information which could be utilized in establishing an exact location of Mr. Mierzejewski on the dates and times in question. Specifically, as noted in the Sprint tower call records documentation no specific site location information can be established for calls placed or received for calls 20:06:14, 21:04:37, 21:09:05, 21:15:58 and 21:17:23 on July 7, 2001 and call 1:39:01 on July 8, 2001. Further, calls 19:59:27, 21:16:11, 21:17:34 on July 7, 2001 are noted in the Sprint tower call records documentation as being recorded as "Undeveloped Cell Site" with no specific address or site number provided. Mr. Sylvester in his consultants report also notes these findings as noted in his response to call 21:17:34.

Call 20:03:43 on July 7, 2001 was noted as terminating on cell tower #132 located in Edgewood (Deer Park) NY. Call 21:04:45 on July 7, 2001 was noted as terminating on cell tower #194 located on Yaphank Rd., Patchoque, L.I. Call 1:39:02 on July 8, 2001 was noted as terminating on cell tower #018 in Smithtown, L.I. Call 6:46:10 on July 8, 2001 was noted as terminating on cell tower #003 in Dix Hills, L.I. These sites are noted on the Sprint coverage map as being located in the greater central Long Island area. The question regarding cell phone range arose in Mr. Sylvester's report. It was noted that cell phones typically operate in a one to six mile range of cell towers with longer distances of ten miles being possible. Mr. Sylvester commented that the towers that did record actual call traffic were in excess of these distance parameters from Greenpoint N.Y.

From my own personal professional experience I can say that stated "Typical" telecommunications standards are stated in conservative terms. Frequently standards parameters such as distance are developed and published to fit into very conservative parameters. Often however actual performance may greatly exceed stated standards such as distance. Unlike traditional hardwired telecommunications networks, cellular technology is affected by many factors. Hardwire telecommunications networks connect calls through dedicated static call circuits. Cellular networks are considered dynamic in their call processing. Meaning that depending upon many diverse factors at the time a call is placed a call may be processed in quite different ways. For example, completely different towers may in fact process two calls placed minuets apart from the same location. Factors such as call traffic at any give moment, signal strength, topology, obstructions etc. all play a role in establishing and completing cellular calls. This is clearly stated in the Sprint coverage map documentation. Quote " Maps show approximate service areas for outdoor coverage. They're based on computer-generated radio-frequency projections and information from third parties but don't guarantee service availability. Actual coverage and the quality and availability of coverage can vary according to network problems, signal strength, your equipment, terrain, structures, weather and other limitations or conditions. Coverage isn't available everywhere and may not be available in all areas shown on these maps." All Cellular networks are designed to best complete calls. The networks make best efforts to complete calls given all factors. As a result of their dynamic design the cellular network will utilize any available network resources available to complete calls. Including the use of far distant towers. Given that the amount of towers constructed in the greater New York/Connecticut area was likely less in 2001 than it is today, the flat topology of the Long Island area etc. it is my opinion that it could have been possible for calls to be completed by towers in excess of the general parameter of six to ten miles. From personal experience I have known this to happen while traveling in the lower Fairfield County/Greater New York City region. On occasion during the same 2001 period of time it was not unusual for my cell phone to grab signal from a tower on Long Island even though I was out of typical calling range. This situation also has occurred to me when placing calls in the greater Waterbury area. Often signal is pulled from far distant towers located within upstate New York.

In addition to the findings noted above I did note other discrepancies while reviewing the provided documentation. Within the report provided by Mr. Sylvester he notes that call 21:04:05 laced on July 7, 2001 was initiated and terminated on cell tower located on SCWA water tower, west side of Patchoque Yaphank Rd., Patchoque, N.Y. and noted as cell site #018. Mr. Sylvester also notes that Call 1:39:02 was initiated and terminated on tower located at 887-889 Jericho Turnpike in Smithtown, N.Y. and listed as cell site #018. The attached Long Island map has the Patchoque location notes as cell site #194.

Further, in reviewing plaintiff's exhibit 22, exhibit 23 and the attached police continuation reports it appears that Detective James P. Wardell only utilized Sprint billing call detail records when he mentions his review of personal phone records. It is clear that his review did not include any input from the Sprint tower call records report. This is evidenced by the lack of noted seconds of each call noted. Calls noted on the billing call detail records do not include the seconds of each call while call detail provided by the tower call detail report does.

## Summary:

After reviewing the provided information and noting the details above, I can conclude that because of the lack of complete and accurate call detail and tower location information along with noted discrepancies that the information provided lacks sufficient credibility as to the determining the whereabouts of Mr. Mierzejewski for the period in question. I do believe that given the fact that the cellular network is dynamic in nature and is affected by conditions noted, calls placed may be serviced by cell towers beyond "Typical" calling range. Further, should complete information have been provided determining the exact location of a person using a cellular network is not possible. Cellular networks are designed for mobile communications and rely on multiple towers to connect and process calls. Given the fact that calls are processed in dynamic fashion calls from any given spot can be processed over different network towers and equipment.